No. 4040

Second Circuit

SOREY v. YAZOO & MISS. VALLEY R. R. CO.

(July 14, 1931. Opinion and Decree.)
(October 1, 1931. Rehearing Refused.)

George Wesley Smith, of Rayville, attorney for plaintiff, appellant.

Stubbs & Thompson, of Monroe, attorneys for defendant, appellee.

DREW, J. Plaintiff, as the surviving father of his minor son, sixteen years of age, sues for $10,000, damages for the death of his son, alleged to have been negligently killed by one of the trains of defendant east of and beyond the corporate limits of Rayville, in the parish of Richland, on February 14, 1930, while sitting on the end of a cross-tie of defendant's

main-line track adjacent to the public highway where defendant's tracks are fenced, where there is a gate, but no crossing.

Plaintiff alleges that it was the custom of citizens in that locality to use the gates in going on and off the right of way of defendant, and that, while the place was used as a crossing by such citizens, it was not recognized by defendant as a public crossing, that the track of defendant in both directions from the place of the accident is straight and practically level; that deceased left his home with plaintiff about one-half mile north of defendant's track, went through an open gate in the right of way fence, followed a path up to and sat down on the end of a cross-tie on the north side of the track and went to sleep, or otherwise became unconscious. That defendant's passenger train, which was due at Rayville about 4 o'clock p. m., was on time; that it approached the place where deceased was sitting, with the view of the engineer unobscured; that the engineer, had he looked, could have seen deceased a half mile away and at one-quarter of a mile distant could have discovered deceased to be a human being. That it was the duty of the engineer to observe deceased and to approach him with his train under such control as would have enabled him to stop upon getting close enough to know that deceased was a human being, or to have reason to suspect that such was the identity of the object; that, if the engineer failed to see the object and distinguish its identity, it was gross and wanton negligence, and that the engineer negligently failed to discover the object or its identity in time to avoid striking deceased, and that the engineer continued at full speed, struck deceased, and fatally injured him.

The answer admits the death of deceased from collision with the locomotive of one of defendant's passenger trains, running at a rapid rate of speed, but denies that the death of deceased was due to any fault or negligence on its part, and avers that such death of deceased, a trespasser was due entirely to his own fault and negligence, in that deceased, without any business or necessity calling him there, deliberately went upon defendant's right of way and sat down on the end of a cross-tie on the north side of defendant's main-line track, where he could not have been and was not seen by defendant's engineer, who was at his post, keeping a sharp and proper lookout ahead, in time to stop and avoid the accident. That on the afternoon of the day alleged, which was a cloudy day, while defendant's train No. 237 was running at a speed of from fifty to sixty miles per hour, with defendant's enginemen, particularly its engineer, keeping a sharp lookout ahead, with its machinery, especially all braking apparatus, in good efficient condition and working well, defendant's engineer saw an object which he then took to be a pile of rags or dead weeds at the end of the cross-ties on the north side of the track ahead; that the engineer continued to observe the object, and, as soon as possible under existing conditions, discovered the object to be a man or boy sitting on the end of a cross-tie near the trestle; that, immediately upon so discovering the identity of the object, the engineer sounded his whistle alarm, applied his brakes in the emergency; that the brakes responded promptly and efficiently and slowed down and eventually stopped the train, but not in time to avoid striking deceased, who, when the whistle alarm was sounded, arose, facing north and away from the track, and could easily

have taken a step to a place of safety, but who suddenly stepped backward and toward the approaching train and collided with the pilot beam of the locomotive, and was thereby fatally injured. Defendant specially denied that the death of deceased was due to any fault or negligence on the part of defendant, but averred that the accident to and resultant death of deceased was due solely to the willful negligence of deceased, a trespasser, in the discharge of no duty, without necessity or excuse in going upon the private property of defendant, and there voluntarily placing himself in a position of known danger, at a place, and so acting and under such conditions of weather and otherwise, where his presence, identity, and peril were not and could not have been discovered by defendant's enginemen in time to avoid the accident, despite the prompt and efficient efforts by defendant's engineer to discover deceased and to stop his train and avoid striking deceased; and that, immediately upon discovering the presence and peril of deceased, respondent's engineer applied his brakes in the emergency and blew his whistle, which was heard by deceased, who then had ample time and opportunity to avoid injury, but only arose and then stepped toward the approaching train, by which he was struck, but which was then in the process of stopping from the application of the brakes, and stopped a short distance after colliding with deceased.

There was judgment for defendant, rejecting plaintiff's demands, and from that judgment plaintiff has appealed.

The location of the scene of the accident is about one mile east of the railroad station at Rayville, and one-half mile outside the corporate line. The railroad track runs east and west, and, for a distance of several miles east of the place of accident, the track is perfectly straight with very little incline, and, on both the north and south sides of the track, there is a gate which was open at the time of the accident and a well-beaten footpath leading from one gate to the other and up the embankment on the north side. The gates are about four feet wide, and there is no crossing, either public or private, other than the use that had been made by pedestrians.

About two thousand feet east of the scene of the accident is a public crossing, and about 850 to 950 feet east of the place of accident are the section houses under fence extending from a point about 900 feet east of the place of accident to a point about 1,200 feet east of the place of accident. From a point 150 to 200 feet west of the place of accident is a trestle. On the outside of the right of way fence and parallel thereto, there is a public road that leads to the home of plaintiff, a distance of one-half mile from the scene of the accident; the public road likewise leads back to Rayville.

That pedestrians made some use of the open gates on the north and south sides of the railroad track at the place of the accident is shown by the more or less beaten path from gate to gate. There is no thick settlement on either side of the track from the place of accident to the corporate limits of Rayville. There is an occasional farmhouse as one would ordinarily expect to find along the track in passing through any farming section of North Louisiana. The track was used by pedestrians to some extent, about as one would expect to find anywhere along a track, except through isolated sections of the swamp where there

are no inhabitants. It was not used to the extent that it is in thickly settled communities or within the corporate limits of incorporated towns and cities, although at the very time of the accident there was one other white man and two negroes walking on the track within a distance of one-quarter of a mile of the accident.

Deceased, a sixteen year old high school student, was drunk on Jamaica ginger, and the principal of the high school, finding him in that condition on the school grounds at about 3:30 p. m., called his father, who took the boy in charge, placed him in a car with his older brother, Herbert, who attempted to take him home. When they arrived at a point opposite the gate near the place of accident, the deceased became so uncontrollable that his brother, Herbert, could not hold him in the car and drive at the same time. He put the deceased out and went for help to handle his brother. Not finding any one at home to help him, he returned to town for the purpose of getting an officer to take charge of the deceased. After Herbert had gone, deceased walked through the open gate, following the path to the railroad, which he crossed and sat down on the end of the cross-ties on the north side of the track. The evidence as to the position in which he was sitting is conflicting. Plaintiff's witnesses testify that his head was resting in his left hand, with his elbow on his knee. Defendant's witnesses say his head was down between his knees. However, this conflict can have little material effect on the outcome of the case. All witnesses testify that he was sitting in a stooped position, and that he was dressed in a dark blue shirt and light trousers. He weighed about 135 to 140 pounds, and was about five feet, six inches in height.

While in this sitting position, the westbound passenger train came along at a rate of speed of from fifty to sixty miles per hour; the engineer and the flagman (who was standing in the door of the baggage car next to the engine) both testify that, when the train was a short distance from the deceased, he got up, took a step or two away from the track, then staggered back into the path of the train. Deceased's sister testified that she could see and recognize her brother in his sitting position while she was standing on her back gallery, a half a mile away; that she heard the train whistle, and that she tried to get as near deceased as possible and had proceeded down the road about one-half of the way, which was about a quarter of a mile from deceased, when the train struck him; and that deceased did not move before being struck by the train.

The evidence shows that one going down the road from the house where deceased's sister says she was, toward deceased, had a view of the place where deceased was on the track, with the exception of a space of about one hundred yards distance where the view was obstructed. That place on the road where the view is obstructed for about one hundred yards happens to be at the exact place where deceased's sister says she was when the train struck him. To say the least, her view was not as unobstructed as that of the engineer and flagman. They were in a better position to see the actions of deceased than his sister was, and their interest in the case can be no greater than hers.

The preponderance of the evidence is that deceased did get up and attempt to move away from the on-coming train, then staggered back into its path. That the de-

ceased was asleep or unconscious while sitting on the end of the cross-tie is not shown by the record. The fact that he attempted to get out of the way of the train, to our minds, shows that he was neither asleep nor unconscious, and the last persons who saw him on the track before the train came along were the two negro witnesses, who passed him while he was in the sitting position only a few moments before the fatal accident.

One of the witnesses testifying for plaintiff says that deceased was sitting with his head in his left hand, his elbow on his knee and facing east, the direction from which the train came; that he recognized the deceased, but that deceased did not speak to him and he did not speak to deceased. If deceased had been asleep, plaintiff had the opportunity to prove it by these two witnesses. They were not asked the question, and the testimony that "he did not speak to me and I did not speak to him" strongly indicates that he was not asleep, and that the witnesses expected deceased to speak. It is certain that deceased was a trespasser when he went on the tracks of defendant and guilty of negligence, and, if he was not asleep, his negligence continued up until the time of the accident and would be a bar to the recovery by plaintiff for his death.

Deceased could not have been on the track for more than ten or fifteen minutes before the accident, and unless he was groggy drunk—the contrary of which is shown by his action in resisting the attempt of his brother to take him home—he would hardly have fallen asleep in so short a time.

The engineer first saw deceased on the track when about 1,000 feet from him and did not recognize him as a human being until within six or seven hundred feet, at which time he sounded the whistle three or four times, at the same time applying the emergency brakes. The train was traveling at a rate of speed of fifty to sixty miles per hour, on a slightly down grade, and could not be stopped, by actual test, under 1,561 feet. Therefore, the engineer could not have stopped the train before reaching the deceased, after he discovered him to be a human being or after discovering an object on the cross-ties, which he at first thought to be a bundle of rags or weeds.

Plaintiff urges that the engineer should have seen the object at least 2,000 feet away and should have recognized it to be a human being at least 1,000 feet away. That upon seeing the object, not knowing what it was, he should have slackened the speed of the train and brought it under such control as to be able to stop it before striking the person, after recognizing it to be a human being. He offers the testimony of one witness, who was about 2,000 yards away from the deceased, just before the train struck him, who testifies that he saw the object on the cross-ties, but could not tell what it was. He offered four or five other witnesses who, for the purpose of making a test, placed a boy in the position and place that deceased was at the time of the accident, and measured east 2,000 feet, from which point they all testified that they could see an object on the end of the cross-tie, but could not tell what it was. That they then walked back toward the object to a point where they could recognize it to be a human being, and all of the witnesses, except one, testified that, when 1,000 feet from the object, they could recognize it to be a human being. One witness says he could not recognize it to

be a human being until within 700 feet of the object.

Defendant made a like test, with the identical same train and engineer and while running at the same rate of speed. The testimony shows that the engineer on this test first saw the object when practically 900 feet from it, and recognized it to be a human being when between 700 and 800 feet from it; and that the emergency brake was immediately applied and the train stopped within a distance of 1,561 feet.

The record is clear and without contradiction that the engineer on the day of the fatal accident did not discover the deceased until nearly 1,000 feet from him and did not recognize him to be a human being until nearly 700 feet from him; and that, after discovering him, the engineer did all that was humanly possible in order to prevent the accident, without success. Therefore, if we should presume that the unfortunate boy was asleep or unconscious, the only questions to be determined are: Was the engineer using the care required of him under the circumstances and keeping a proper lookout, and, in exercising the care required of him under the circumstances, should he have discovered the object sooner than he did and should he have slackened the speed of his train at the point where he should have seen the object, before recognizing it to be a human being?

The location of the accident was outside of the corporate limits of the town, at a place where the tracks were not much used by pedestrians, and where the agent of the defendant (the engineer) would not reasonably expect to find one asleep or unconscious on the track. The engineer was not obliged to exercise anything more than ordinary care if the deceased was not asleep or unconscious—and we do not think he was—the only thing required of the engineer was to sound his whistle, as he could reasonably expect deceased to remove himself from the path of the on-coming train.

"Ordinary care" means that degree of care which prudent men skilled in business would be likely to exercise under the circumstances, as distinguished from "extraordinary care," which means the greatest care, utmost care, the highest degree of care the railroad owes to those rightfully on its track and to those who are not trespassers. It is likewise the difference between the degree of care to be exercised by an engineer in traveling through a populous center, a corporated town, or where the track is used by a great number of people for a sidewalk, and when traveling through an open country outside of an incorporated town where the engineer could not be held to have reason to expect pedestrians on the track.

Under the facts in this case, we think the engineer did exercise ordinary care and kept the proper lookout, as required thereunder. It is common knowledge that an engineer cannot keep his eyes glued to the track ahead every second of the time he is running, his duties inside the cab require him to use his eyes inside the cab at times as well as to keep a proper lookout; and when on a straight stretch of track, as in this case, in the open country, it is not negligence for him to take his eyes off the track ahead for a short time. If the engineer had taken his eyes off the track just before reaching a point 2,000 feet from the deceased, in performing other duties, and should fail to look out for ten or twelve seconds, the difference in the distance from where he first saw the object

on the cross-ties and the distance plaintiff's witnesses first saw it, at the speed the train was traveling, would have been covered by the train. In some jurisdictions it has been held that a trespasser on a railroad track is negligent, and that when he goes to sleep, after negligently going on said tracks, it amounts to recklessness; that his negligence does not become passive by virtue of his unconsciousness, and the railroad company only owes him the duty of not willfully and wantonly injuring him, after discovering his presence. The courts of this state have held that, when a trespasser becomes unconscious while on a railroad track, his negligence then becomes only passive negligence and the doctrine of last clear chance is applicable, and the degree of care to be exercised is governed by the location of the trespasser on the track, whether in thickly populated centers or in the open country, as above set forth in this opinion.

The engineer in the case at bar exercised the ordinary care required of him under the circumstances, and, after he discovered the deceased on the cross-ties, it was impossible to avoid striking him. Assuming, however, that the engineer should have seen the object 2,000 feet before it was struck, he was not required to slacken the speed of the train when he honestly thought the object to be a bundle of old rags or weeds, his sight being good, the object not being between the rails, and being at a place where he could not be held to reasonably expect to find a person sitting on the cross-ties asleep, unless it was an object that was likely to endanger the passengers and other persons lawfully on the train. His first duty was to those lawfully on the train, and not to trespassers.

The object claimed by plaintiff that the engineer should have seen 2,000 feet before reaching it was not such an object as would endanger the lives of those lawfully on the train, as is shown by the fact that it was struck without injury to any one other than the deceased. If an engineer was required to slacken the speed of his train for every object seen on the track, the making of schedule time would be impossible; he is only required to slacken the speed when passing through an open country when the object is of such a suspicious nature as to cause him to think it might be a human being who is unable to protect himself. In this case, deceased was dressed in a manner not to make him a very noticeable figure when sitting, humped over, on the end of a cross-tie.

There is much testimony as to whether the day was cloudy or whether the sun was shining. The evidence thereon is very conflicting, and, under our finding, has little, if any, material effect on the case. Plaintiff has failed to show that the deceased was asleep or unconscious, and the evidence offered convinces us that he was neither. He was a trespasser, grossly negligent, and his negligence continued up to the time of the accident. The engineer in charge of the train exercised ordinary care to avoid the accident, saw the deceased as soon as practicable under the circumstances, and, after seeing him, used all means available to prevent the accident. The cause of the accident was the negligence of the deceased.

The judgment of the lower court rejecting the demands of plaintiff is correct; and it is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with all costs.

McGREGOR, J., recused.