This is a tort action in which the plaintiffs, father and mother of Alice Faye Sullivan, sue to recover damages for her tragic death which occurred about 10:15 o'clock A.M. November 3, 1940, when she was struck by an east bound train of the defendant railway company, being operated by F.J. Watts, engineer. The engineer and the company are both impleaded as defendants.
Plaintiffs, at the time of the accident, resided on a farm one-half mile west of *Page 110 
Start, Louisiana, and about one mile east of Crew Lake, Louisiana, flag stations on the railroad. Their residence was one hundred eighty-five (185') feet south of the track, facing the old gravel state highway. Thirty (30') feet east of the residence a well beaten path makes off northerly from this gravel road, passes over the railway and intersects a new concrete highway three hundred eighty (380') feet distant. Both highways parallel the track and run easterly and westerly.
The morning of the accident plaintiffs were at home with their children. The mother was busily engaged with household cares and the father was doing odd jobs. For a few minutes, estimated to have been not more then ten, immediate watch over Alice Faye was relaxed and in this brief time her life was lost. She left the house, took the path, trudged up it to the track, and doubtless had barely reached the end of her journey when the train passed. She was near to or on the south rail. No one witnessed the tragedy save the engineer and fireman.
The train consisted of locomotive and six cars. It was moving at fifty (50) miles per hour. The track is straight for several miles on each side of the locus of the accident. Visibility at the time was good.
The engineer's negligence in the following respects allegedly caused the accident, to-wit:
"* * * (a) he failed to maintain a proper lookout, (b) failed to see and identify as a child Alice Faye Sullivan on the track as soon as he could under the circumstances, (c) failed to see and identify as a child said Alice Faye Sullivan on the track as soon as an ordinary reasonably prudent engineer could under the circumstances, (d) failed to commence stopping his train as soon as he saw or should have seen the child on the track, (e) failed to stop said train as soon as it could have been stopped under the circumstances, (f) failed to stop his train to avoid striking the child, and (g) failed to do anything to avoid and prevent the train striking the child. * *"
Defendants deny that the engineer was in any manner or to any extent careless or negligent in the operation of the train, and, therefore, disclaim responsibility for the accident. Amplifying their position and defenses, they plead:
"Further answering, defendants say that at about the hour of ten o'clock of the morning of November 3, 1940, its regularly scheduled passenger train No. 204, traveling from west to east, consisting of an engine and six cars, at or about a point some 3300 feet west of Start, Louisiana, a flag stop on defendant's railroad, in an open, rural and sparsely settled and inhabited section of country, struck and instantly killed a child about 12 months old, later identified by name as Alice Faye Sullivan, but whose status and parentage were then and now to defendants otherwise unknown; that at the time of said accident and prior thereto the engineer and fireman of defendant's train were at their post of duty and keeping a sharp lookout ahead and exercising the care of them required; that the equipment of said train, and especially all braking apparatus, was in good and efficient condition and working perfectly; that the speed of said train was legitimate, reasonable and permissible under the then attending circumstances and conditions; that the engineer and fireman of defendant's train discovered the body of said child as soon as it could have been discovered by them, and when discovered the child was lying on the ground, on its stomach, outside of the rails, on the south side of the track, near the end of the cross ties; that immediately upon the discovery of the body of this child the engineer applied his brakes in emergency in an effort to stop his train; that the brakes responded promptly and efficiently and slowed down and eventually stopped the train, but not in time to prevent the engine from striking the head of the child."
In the alternative, defendants plead the contributory negligence of the parents in that they allowed the child to stray off and get on the track, in bar of their action.
When plaintiffs rested, the court was so clearly of the opinion that they had signally failed to make out a case, the case was ordered closed over defendants' counsel's objection and regardless of his insistence upon the right to introduce testimony in defendants' behalf, and rendered judgment rejecting plaintiffs' demand. Defendants excepted to the ruling of the court. Plaintiffs' counsel did not then and do not here complain of the court's summary action. Appeal from the rejection of the demand is prosecuted.
Plaintiffs predicate their case and base their hopes of recovery upon the position, assumed by them, that the section of the country at and contiguous to the situs of the accident was so densely populated and *Page 111 
was traversed by so many highways, used by pedestrians and vehicles, the train should have been operated at a speed less than at which it was going when the accident occurred and immediately prior thereto, such a speed that would have made it possible to stop the train after discovery of the child on the track, before running over it.
It is shown that within a radius of one mile from the site of the accident there are one hundred fifteen (115) residences of various kinds, including thirty (30) in the village of Start and three (3) at Crew Lake. The majority of these buildings are tenant houses, on farms and plantations. There is only one residence on the south side of the railway between plaintiffs' home and Start. Part of the distance is covered by woodland. On the south side of the railroad between the residence and Crew Lake there are five tenant houses at intervals of about 1/8 of a mile, and a small schoolhouse. On the north side of the railroad between Crew Lake and Start only three (3) residences face the highway. Therefore, it is easily observed that the locus in quo is not densely nor thickly populated within the meaning of the stated rule.
Trains over the country daily travel at rapid speed through farm sections and plantations over which the population is distributed about the same as we find it here. If trains were forced to operate in such locales at a speed so slow that they could be stopped within a few hundred feet or within the distance between them and persons who recklessly choose to go upon the tracks, it is manifest that schedules would all have to be revised, transaction of business delayed and impaired, and the interest of the general public unfavorably affected. Such a rule would throw upon railroads exclusively the duty and obligation to save human life regardless of all other considerations and regardless of the imprudence and recklessness of those who choose to cross or travel upon their tracks.
We are certain that the facts of this case take it out of the well recognized rule of law embraced in plaintiffs' position. On the contrary, these facts bring the case well within the "open country" rule applicable to the operation of trains.
Engineer Watts has driven trains over the railroad between Shreveport and Vicksburg for forty-four years. This long and satisfactory service speaks eloquently for his efficiency and reliability in that capacity. He testified that he was at his post when he first observed the child near the track, some seven hundred (700') feet away, but at that time he did not recognize the object as being a child. He did so when the train was only about three hundred (300') feet away and at that time he applied the brakes as an emergency and sounded the whistle; that it requires about nine hundred (900') feet to one thousand (1000') feet to stop this train when going fifty (50) miles per hour; that the brakes were in efficient mechanical condition and responded, but the train did not stop until it had gone several hundred feet beyond the child.
Mr. Watts did not describe the physical position of the child when he first observed it, but defendants' sworn answer avers that it was on its stomach at the end of the ties at that time. This matter would doubtless have been gone into thoroughly had defendants been allowed to adduce testimony. Watts was called by plaintiffs as in cross examination. It is reasonable to assume that this small child, who had been able to walk only three months, did aimlessly crawl up the road's embankment in its desire to reach the top and was on its stomach when first noticed by the engineer. The engineer's testimony is corroborated by the fireman in all material respects and details.
The fact that the path from near plaintiffs' residence to and over the track was used by persons as a short cut from one highway to the other is stressed by plaintiffs, and from that practice it is argued that the train should have slowed down when approaching the crossing. Mr. Sullivan testified that this path was used daily by pedestrians but that the number did not exceed from one to four or five each day. It was in no sense a highway but was beaten out by persons who found it convenient to cross the railroad in pursuit of business or pleasure. Mr. Watts testified that he knew the path was there but had never seen anyone on it.
Trains are not required to stop nor even slow down at regular highway crossings unless discovered conditions thereabout require that such be done. A fortiori is such not required where paths and trails cross the tracks. At such crossings a train's operatives violate no law nor breach any duty by not reducing speed. *Page 112 
By a long and unbroken chain of decisions the courts of this state have constantly adhered to the rule expressed in Davis et al. v. Alexandria Western Railway Co., 152 La. 898, 94 So. 436, 437, that "in the open country any rate of speed consistent with the safety of train was proper and legitimate". Houston v. Vicksburg, Shreveport Pacific Railroad Co., 39 La.Ann. 796, 2 So. 562, 563, is cited. In that case the court employed the following language in a cogent discussion of the rule:
"There is in this state no statutory regulation of the speed on railways. Of course it would evince a criminal negligence to move a train at a high rate of speed through cities, towns, or villages, or other places where people are accustomed to throng; but, considering that railroad companies are entitled to the exclusive use of their track or road-bed, there is no reason why, in an open country, not thickly populated, the mere probability that a person or persons might occasionally walk on the railroad track should be made a factor in this question of speed on railroads. A high rate of speed has always been a great desideratum, and engineering skill has been taxed to the utmost to attain it; and we conceive the reasonable and established rule on this subject to be that no conceivable rate of speed, consistent with the safety of passengers, is per se negligence. Pierce, R.R. 354; Ror. R.R. 1066."
This rule is adhered to in Jeter v. Texas Pacific Railway Co., La.App., 149 So. 144, and Campbell Co. v. Texas Pacific Railway Co., La.App., 152 So. 351.
In Winfiele v. Texas Pacific Railway Co., La.App., 150 So. 43, it was held that a speed of fifty-seven (57) miles per hour through a hamlet consisting of three (3) stores, a cotton gin, a potato house, cane derrick or rack, three (3) residences and five (5) tenant houses, was not excessive.
The speed at which the train in this case was moving was not excessive in view of physical conditions of the locale. The fact that the engineer did not see the child sooner certainly does not amount to actionable negligence. Had he done so, he would not have known that the object he saw flat upon the ground was a human being, and therefore no effort would have been made to reduce the train's speed earlier than was done. Trainmen are not required to slow down a train nor stop it each time some object, the identity of which may not be determinable, is observed upon the track or dangerously near thereto.
In Sorey v. Yazoo Mississippi Valley Railroad Co., 17 La.App. 538, 136 So. 155, it was held by this court that:
"Engineer operating train outside incorporated town held required to exercise ordinary care, as distinguished from extraordinary care required where track is used by great number of people."
It was also held in this case that it was not necessary for an engineer to keep his eyes constantly glued to the track ahead in order to discharge the duties resting upon him, and "* * * when on a straight stretch of track, as in this case, in the open country, it is not negligence for him to take his eyes off the track ahead for a short time."
Several witnesses testified that a child about the age and size of Alice Faye while standing erect on the tracks where the accident occurred was easily recognized by them as a child, at a distance of twelve hundred (1,200) feet, and from this test it is argued that the engineer should have seen Alice Faye at a distance within which the train could have stopped. This test does not serve as a dependable guide for two obvious reasons, to-wit:
(1) The witnesses, in advance, knew the test was being made and knew the child would be used in doing so, and
(2) This child stood erect, whereas we are certain Alice Faye was on her stomach when seen by the engineer and likely remained in that position until killed.
The trial judge was manifestly correct in holding that plaintiffs failed to prove that the unfortunate death of their little girl was ascribable to any negligence or carelessness on the part of the trainmen and in rejecting their demand he is abundantly supported by the evidence in the case and the pertinent principles of law.
For the reasons above assigned, the judgment appealed from is affirmed, plaintiffs being cast for all costs.
DREW and HAMITER, JJ., concur. *Page 113