# 796    SUPREME COURT OF LOUISIANA.

## No. 1164.

## John R. Houston vs. Vicksburg, Shreveport and Pacific Railroad Company.

Suits against railroad companies for damages may be brought in the parish where the damage was done or the injury received.

Where the speed of railway trains is not regulated by statute, unless in exceptional cases, the existence of a high rate of speed does not argue a fault on the part of the company.

The reasonable rule is that the highest rate of speed is proper and legitimate consistent with the safety of the passengers.

A person cannot recover for an injury to which he has contributed by his own want of ordinary care.

APPEAL from the Third District Court for the Parish of Lincoln. *Young,* J.

*Barksdale & Van Hook* and *Graham & Gaskins* for Plaintiff and Appellee.

*Stubbs & Russell* for Defendant and Appellant.

The opinion of the Court was delivered by

Todd, J.    This is a suit of the plaintiff in his own right and as tutor of his minor children for $22,500 damages, resulting from the death of his wife, Mrs. Georgia Houston, and infant child, run over and killed by the train of the defendant company on the 13th of January, 1885.

It is charged in the petition that "the killing was wantonly and recklessly done, and might have been avoided by ordinary care and prudence on the part of the employees of the railway company."

The answer is a general denial and an averment that the death was caused by contributory negligence on the part of the deceased.

The case was tried by a jury, who, by a majority, returned a verdict in favor of the plaintiff for $13,970 individually and as tutor, one-half in each capacity, and from the judgment on this verdict the defendant company has appealed.

There was a plea to the jurisdiction *ratione personæ* filed, which was overruled. This ruling was proper under the provisions of paragraph 9, C. P. 168, authorizing an action of this kind to be brought in the parish where the damage was done. This article was not repealed by the charter of the company. 30 Ann. 607. Besides, from the silence of the defendant's counsel, we infer that the correctness of the ruling on this point is not questioned.

The facts of the case are substantially and briefly these:

The deceased, carrying her infant child and accompanied by her sister, was walking on the railroad track, returning from a visit to a

neighbor and going eastward to their home, which was on a public road running parallel with the track of the railroad, and about 150 yards distant therefrom. The train, bound in the same direction that the deceased and her sister were going, approached them. The latter stepped from the track and the train passed by her; the former was, however, overtaken at or near a crossing of the road to which she was hurrying; was run over and killed, together with her infant child.

The fault charged against the company, from which this deplorable calamity is alleged to have resulted, was the unusual and extraordinary speed at which the train was then and there being propelled, and the failure to give a timely warning, by the required signals, of the rapid approach of the train, and the failure to stop the train in time to avoid the casualty.

The contributory negligence charged was alleged to be that, notwithstanding the train was seen and heard by the deceased at a sufficient distance and in sufficient time to have afforded her ample opportunity to get off the track and thus avoid all danger, she persisted in remaining on the track after the train had been heard and seen, and after the signals had been timely given by the ringing of the bell and the blowing of the whistle, and when there existed no impediment to her getting off the track in a moment. And it was charged that her death was caused, not by the fault of the company, but by her own negligence in failing to take ordinary care to avoid the threatened danger.

There is a conflict in the testimony respecting the rate of speed at which the cars were running at the time of the disaster. The plaintiff contends that the train was moving at a speed of nearly sixty miles per hour, and the defendant that it was a speed of twenty-five to thirty miles only. We cannot see that this is a material inquiry.

There is in this State no statutory regulation of the speed on railways. Of course, it would evince criminal negligence to move a train at a high rate of speed through cities, towns or villages, or other places where people are accustomed to throng; but, considering that railroad companies are entitled to the exclusive use of their track or road-bed, there is no reason why, in an open country not thickly populated, the mere probability that a person or persons might occasionally walk on the railroad track should be made a factor in this question of speed on railroads. A high rate of speed has always been a great desideratum, and engineering skill has been taxed to the utmost to attain it; and we conceive the reasonable and established rule on this subject to be that no conceivable rate of speed consistent with the safety of passengers is *per se* negligence. Pierce, 354; Rorer, 1066.

In the case before us, for instance, what mattered it at what rate of speed the train was moving, if the deceased could, if she chose, have stepped off the track, and was not prevented from doing so by the speed at which the train was running?

Under this view of the subject we cannot discover any fault of the company in connection with this question of the rate of speed at which the train was then moving.

Was the company in fault in failing to give a timely warning or in stopping or attempting to stop the train in time?

This is what the engineer says on this point:

"I was between three hundred and four hundred yards from them when I first discovered them. I rang the bell and blew the whistle to call their attention to the coming train. Both looked back, saw the train, and they turned around and both walked on a few steps, when one of them stepped off on the north side of the track. I expected the other one to get off any moment, as one does that is walking on the track that way. She never showed by her actions that she was frightened, was out of her mind or deaf. She commenced running down the track ahead of the engine. In the meantime I was getting very close to her. I thought she would not have time to make the crossing before I got to her, so I reversed my engine. (Then he describes the effect of reversing an engine.) The reason I reversed the engine on this occasion was to try to save the woman. There was no other means that I could have used to avert the accident; I used all the means I had. It is no unusual thing to see persons on the track ahead of an engine; I never before saw an occasion in which they did not step off to the side of the track. I don't think I can recall a trip that I ever made over the road in the day time where I did not see persons ahead of the engine on the track. I was engineer in charge of the locomotive; there was nothing undone by me that could have been done to avoid the accident."

There is some conflict between this statement and that of other witnesses, especially as to the distance between the train and the deceased when the warning signals were given, it being stated by one or more witnesses that the space between them was not more than fifty yards when the whistle sounded. Be that as it may, however, considering that the deceased was in hearing of the cars and in view of them from four to six hundred yards, that she was in the full possession of her faculties, mental and physical, and the engineer had the legal right so to presume, and that ordinary care for her own safety and the instinct of self-preservation even would warn her to step off the

track, which her sister had already done, the engineer was not in fault in not sooner realizing and appreciating the imminence of the peril, and in not sooner taking steps to avoid it.

It is equally clear from the facts stated that the death of the deceased was really caused by the want of ordinary care on her part. It was entirely in her power to save herself by the exercise of such care. There was not the slightest difficulty in the way, as was apparent from the easy escape made by the sister of the deceased, who was shown to be of defective eye-sight, and therefore not as capable of taking in the situation or discovering its peril as the deceased.

The doctrine of contributory negligence, in brief, is that a person cannot recover for an injury to which he has contributed by his own want of ordinary care. Thompson, Neg., 1148 et seq.

In the case of Railroad Company vs. Jones, 95 U. S. 442, Mr. Justice Swayne, as the organ of the court, states the following legal propositions, which we quote here as peculiarly applicable: "One who, by his negligence, has brought an injury upon himself, cannot recover damages for it. Such is the rule of the civil and of the common law; a plaintiff in such cases.is entitled to no relief. But when the defendant has been guilty of negligence also, in the same connection, the result depends upon the facts. The question in such cases is: 1. Whether the damages were occasioned entirely by the negligence or improper conduct of the defendant; or, 2, whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care and caution, that but for such negligence or want of care and caution on his part the misfortune would not have happened. In the former case plaintiff is entitled to recover; in the latter he is not." See also 95 U. S. 697.

It is suggested by the plaintiff's counsel that the deceased was evidently confused and bewildered by the appalling situation in which she found herself, and that therefore the principle of contributory negligence could not be imputed or applied to her acts and conduct.

We think it highly probable that her mental condition was such at the time as stated, so extraordinary was her conduct, but unless that condition was brought about by some fault of the defendant company, the deceased cannot be relieved from the imputation or effect of contributory negligence, and such fault we have failed to find, as already stated.

With respect to the death of the infant child, and the effect of the neglect of the mother as bearing thereon, the doctrine is correctly stated thus:

"If the parent is personally present controlling the movements of the child, the parent's negligence will defeat an action for an injury to the child in like manner as if he suffered the injury himself." Pierce 338; Rorer 1031-7 and 1070-1.

Reaching these conclusions, we are compelled to reverse the judgment appealed from.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and that the demand of plaintiff be rejected at his cost in both courts.