LANDRY, Judge.
Defendants herein, W. T. Scogins and Zurich Insurance (Scogins’ liability insurer) have taken this appeal from the judgment of the trial court rendered in favor of plaintiff, New Orleans and Northeastern Railroad Company (hereinafter sometimes referred to simply as “railroad”), and against said defendants, in solido, in the sum of $4,239.41 representing property damages in said amount sustained by one of plaintiff’s trains in a train-truck collision which occurred at a grade crossing on U. S. Highway 11, St. Tammany Parish, on August 11, 1959, when a cement mixer truck, owned and being driven by defendant Scogins, stalled upon plaintiff’s tracks and was struck by an oncoming train.
The facts giving rise to the instant litigation are virtually without dispute between the parties and may be stated as follows: The crossing at which the accident occurred is situated approximately one and one-half miles north of the bridge over which plaintiff’s railroad crosses Pearl River. At said grade crossing plaintiff’s tracks run generally in a northerly-southerly direction whereas U. S. Highway 11, a paved two-lane highway (the main traffic artery between New Orleans, Louisiana and Meridian, Mississippi) courses in an easterly-westerly direction and intersects plaintiff’s tracks at a right angle. Approximately 1200-1500 feet south of the crossing the railroad tracks curve so that an engineer proceeding northerly is not afforded a view of the crossing until he rounds said curve. To the north of the crossing, however, plaintiff’s tracks are straight for a distance of two or three miles so that a southbound engineer has an unobstructed view of the crossing while he is yet quite some distance therefrom. As required by law plaintiff had erected “stop signs” at the crossing which signs were properly placed and situated. To further alert and warn the traveling public of the presence of its tracks and the approach of its trains, plaintiff also installed at said crossing an auto *911 matic electrical device known as a "flasher light” and so designed that, upon plaintiff’s trains passing a point at least 2240 feet distant from the crossing, an electrical impulse is set off activating the warning mechanism and causing a red light to flash alternately on and off thereby apprising motorists of the approach of plaintiff’s trains. Said electrical warning system was so constructed as to flash' its warning to motorists approaching the crossing from the east as well as the west.
Plaintiff’s freight train, consisting of approximately 115 loaded cars, 18 empty cars, a caboose and 5 diesel engines, in charge of plaintiff’s engineer, Henson, proceeding northerly, approached the said grade crossing traveling at a speed of approximately 43-45 miles per hour. At the same time defendant, Scogins, driving his cement mixer truck, at a lawful rate of speed and traveling easterly along said highway behind a truck-trailer, likewise approached the crossing. When the driver of the lead truck noted the railroad crossing, he applied his brakes causing his stop lights to illuminate and warn Scogins that the preceding vehicle was slowing its speed or preparing to stop. Upon noting the stop light of the preceding vehicle, Scogins likewise applied his own brakes and reduced the speed of his truck. The lead vehicle then proceeded to slowly cross the tracks and Scogins prepared to follow. As Scog-ins’ vehicle reached a point approximately 6 to 10 feet south of the tracks the automatic signal light flashed its warning thereby alerting Scogins to the approach of a train. When the light began functioning Scogins was practically stopped but, since no train was within sight, he decided to proceed over the crossing. He shifted gears and gave his truck gas to accelerate his speed in order to negotiate the crossing but in so doing his motor killed causing the truck to stall upon the tracks. Scogins attempted several times to restart his engine but was unable to do so. Upon noting the train round the curve and bear down upon him from some 600-800 feet distant he leaped from the stalled truck to a position of safety. When the train rounded the curve the engineer, Henson, detected the presence of the truck stalled upon the tracks and immediately applied his brakes. The speed and weight of the train was such that it was impossible to stop its progress in time to avoid the collision. The train proceeded through the crossing, struck the disabled truck and continued a distance of approximately 30 car lengths (1500-1800 feet) beyond the crossing before being brought to a halt.
It is conceded that plaintiff’s railroad runs from New Orleans, Louisiana, to Meridian, Mississippi, and that the locus of the accident is the only point at which its tracks cross U. S. Highway 11 at grade, all other crossings being admittedly by overpasses or underpasses. Plaintiff further acknowledges that its crew, particularly the engineer, Henson, was thoroughly familiar with the crossing in question by virtue of his having been assigned to the New Orleans-Meridian run for a number of years preceding the accident. Records of the Louisiana Department of Highways introduced in evidence by defendant indicate that an average of 3050 motor vehicles pass over the crossing daily.
Although learned counsel for defendants vigorously maintains the learned trial court erred in finding defendant Scogins guilty of negligence under the circumstances as well as exonerating plaintiff’s employees from negligence constituting a proximate cause of the accident, the gravamen of defendant’s complaint is the alleged error of the trial court in concluding plaintiff’s employees to be free of negligence herein.
Esteemed counsel for appellants readily conceded that the law of this state recognizes and applies the so-called “open country rule” to the effect that in open country and sparsely settled rural areas there is no legal restriction upon the speed of railway trains and in such areas trains may be operated at any speed consistent with the safety of the train. Houston v. Vicksburg, *912 S. & P. R. Co., 39 La.Ann. 796, 2 So. 562; George v. Shreveport Transit Company, La.App., 136 So.2d 711. Able counsel further acknowledges that in “open country” the law does not require that trains be operated at such speed as to permit its being stopped within the range of vision of the engine crew. Jeter v. Texas & P. Ry. Co., La.App., 149 So. 144; Bahry v. Illinois Central Ry. Co., La.App., 13 So.2d 78.
Illustrious counsel for appellants, however, seeks to bring the instant case within the rule of Blackburn v. Louisiana Ry. & Nav. Co., 144 La. 520, 80 So. 708, and Ledet v. Texas & New Orleans Railroad Company, La.App., 79 So.2d 604, which counsel cites as authority for the proposition that in running through thickly settled neighborhoods in towns or other places where persons or vehicles may be expected to congregate, trains must be operated at speeds which will permit their being stopped without injury to persons. The rationale of the cited decisions obviously being that where there is reasonable expectation that persons may congregate or vehicles frequently cross tracks or that vehicles may possibly stall on the tracks, there is incumbent upon railroads the duty of reducing speeds so that accidents may be avoided. It is readily conceded by counsel for appellants that if the “open country rule” is applicable to the instant case, plaintiff’s employees in charge of the train must be held free of negligence.
The evidence establishes beyond doubt that the situs of the accident is neither within nor near any incorporated municipality. Photographs in evidence showing the highway for a distance of several hundred feet both east and west of the crossing indicate the complete absence of any residence or structures of any other character whatsoever. The photographs also reveal the crossing to be situated in an apparently wooded area.
Learned counsel for appellants argues, however, that -despite the rural location of the crossing it should be categorized a congested area and held to fall within the rule of the Blackburn case, supra, because plaintiff’s tracks cross a main highway connecting two important interstate points (New Orleans, Louisiana, and Meridian, Mississippi) over which said highway more than 3,000 motor vehicles travel daily. Predicated upon such daily volume of vehicular traffic over a highway joining two interstate cities of size and importance, esteemed counsel far defendants maintains such circumstances are sufficient to constitute the crossing an area in which plaintiff’s employees are charged with the burden of anticipating the presence of pedestrians crossing or vehicles stalled upon the tracks thereby imposing upon those in charge of plaintiff’s trains the duty of operating said trains at speeds which permit their being stopped in time to avoid injury to persons or vehicles thus exposed to danger. Counsel further maintains that since plaintiff concedes such a northbound train traveling at 45 miles per hour cannot be stopped within the range of the engineer’s vision of the crossing, to operate at that speed dooms to destruction any vehicle stalled upon the tracks of this particular crossing.
Plaintiff readily concedes it customarily operated trains of this nature at the speed at which the train in question was traveling on the date of the accident and further acknowledges that a northbound train traveling at such speed cannot be stopped within the range of the engineer’s vision of the crossing. Plaintiff relies, however, on the established jurisprudence establishing the “open country rule”.
We readily concede the soundness of the rule of the Blackburn case but find that it has no application here for the reason that the facts in the cited decision are clearly distinguishable from those in the case at bar. In the Blackburn case, supra, defendant’s train ran over an intoxicated person lying upon railroad tracks approximately 100 feet south of the depot in an incorporated municipality, the accident occurring in the early morning hours.
*913 Ledet v. Texas & New Orleans Railroad Company, La.App., 79 So.2d 604, involved circumstances somewhat similar to those involved in the case at bar. The locus of the accident was a sparsely settled rural area. Although the court therein recognized and reaffirmed the rule of the Blackburn case to the effect that where there is reasonable expectation that persons may congregate or vehicles frequently cross tracks, trains should reduce their speed so that accidents may be avoided, nevertheless, the Court denied plaintiff’s claim for recovery on the ground that the area being rural the rationale of the Blackburn case did not apply.
In discussing the difference between the legal principle which permits high speed operation of trains outside urban areas without stopping or slowing down for grade crossings as distinguished from the more rigid rule applicable to the speed at which motor vehicles shall be operated upon the public highway, the Court in the Ledet case made the following pronouncements which we herein cite with approval as follows :
“ * * * The difference lies in the fact that, because the railroad right of way is privately owned, there is much less danger that some one or some article of property will be caught helplessly upon the track. On the public highway there are certain to be other vehicles behind and before each and every other car, and consequently there is more than a possibility — in fact, there is probability and almost a certainty, that continuously situations will arise which will require the stopping or the slowing down of every motor vehicle on the road. Consequently each must be operated at such speed as will permit of compliance by its driver with the rule which requires him to stop before striking a vehicle which may be ahead of him on the road.
“This is not so on the right of way of a railroad. Such possibilities as caused the accident in this case occur only at crossings and only very rarely, since they result either from the intoxication of the man who is helpless on the track or from the fact that the automobile, because of its own defects, has stalled upon the track. Such crossings are usually protected by automatic signals of various kinds and, as a result, all persons who find it necessary to cross the tracks are able to anticipate the appearance of trains and to remain in a position of safety except in the extremely rare cases where their vehicles cannot be removed from positions of danger. It is only in these extremely rare situations that a slowing down of the speed of the train would be of importance, and these occasions are so rare that the general necessity for speed overrides the very infrequent necessity for reduction of speed at these isolated crossings.”
Somewhat analogous to the case presently before us is that of Stelly v. Texas & N. O. R. Co., La.App., 49 So.2d 640, which involved a grade crossing accident at a railroad-highway intersection on the paved New Iberia-Abbeville Highway which crossing was protected by “Stop Sign” only. Plaintiff therein contended that protecting such a grade crossing by “stop sign” only constituted negligence. In rejecting plaintiff’s contention, the court therein stated:
“We fail to perceive said crossing as an ‘extremely dangerous one’, as is contended by plaintiff. Although every railway crossing is, in a sense, dangerous, the evidence indicates that Bran-non Crossing was no more than a ‘typical rural crossing.’ The record shows that approximately 1400 cars passed the crossing each day, and six trains passed the crossing each day. The record further indicates that there is no appreciable curve in either the railroad track or the highway for a distance of some quarter of a mile from the crossing. No buildings are *914 situated near the tracks so as to afford any appreciable obstruction of view along the railroad track. * * ”
Eggleston v. Louisiana & A. Ry. Co., La.App., 192 So. 774, involved a grade crossing accident at an intersection of the Shreveport-Alexandria Highway and defendant’s tracks just outside the corporate limits of Bossier City. The crossing in question was not protected by a flasher light signal but by “stop sign” only. It appears that a daily volume of approximately 5500 motor vehicles passed over the crossing in question. Admittedly the Eggleston case is somewhat different from the case at bar in that it involved an accident occurring within the railroad yards wherein the railway company had imposed a regulation of reduced speed. It was not shown therein that a speed of ten miles per hour was excessive despite the daily volume of vehicular traffic over the crossing and the lack of an automatic warning system.
The .record in the instant case convinces us beyond doubt that the crossing in question was not a congested area in which persons or vehicles may be reasonably expected to congregate. As previously shown, the crossing at which this accident occurred is not situated near a municipality but rather in what appears to be an undeveloped, wooded .rural area devoid of houses or other structures within a distance of at least several hundred feet thereof in either direction. Plaintiff railroad cannot be reasonably expected to anticipate that persons will congregate upon o,r near a crossing thus remotely situated. While it is true that a volume of slightly in excess of 3,000 vehicles are shown to pass over the crossing daily, such flow of traffic alone does not, in our opinion, standing alone, deprive plaintiff railroad of the benefit of the “open country .rule”. Although plaintiff railroad may anticipate the daily passage of a rather large number of vehicles over its said crossing it cannot, in view of the remoteness of the area, be held to reasonably expect a congregation of vehicles on or near its tracks at this particular point. Emergencies excepted, there appears very little likelihood or reasons for vehicles to stop in the vicinity of this particular crossing. The crossing in question is protected not only by “Stop Signs” but also by electric warning signal which gives adequate and timely warning of the approach of plaintiff’s trains. The only danger to crossing vehicles lies in those rare instances wherein a vehicle stalls upon the tracks. In the instant case the signal device was properly functioning and enabled defendant Scogins to abandon his truck in time to avoid injury to his person. That the truck was damaged' is no fault of plaintiff railroad.
The financial plight of modern day railroads is a matter of public knowledge and concern. Their ability to remain competitive in the transportation industry in order to maintain their existence which is so vital to our national welfare, is directly related to the rapidity at which they can transport freight as well as passengers. While they will not be permitted to recklessly endanger lives and property by operating trains at excessive speeds where caution is demanded by the attending circumstances, neither will they be impeded from maintaining competitive schedules by requiring that speed be reduced solely to guard against rarely occurring emergencies. In such latter instances the general necessity for speed supersedes the infrequent necessity for reduction of speed over crossings which are adequately protected by warning devices.
The negligence of defendant Scog-ins is established by the record. His own testimony reveals that the warning signal flashed while he was yet some 6 to 10 feet from the tracks traveling at such a slow speed that he was virtually stopped. Had he completely stopped his vehicle at this point he would have remained in a position of safety. Instead, not seeing the train within sight, he elected to proceed across the tracks. Scogins explained that in *915 shifting the gears of such a ponderous truck, moving at such a slow speed, one cannot readily shift from one gear to another but must “feel his way through”. In attempting to “feel the gear” and simultaneously apply the gas, he caused the motor of the truck to stall. It is not contended that the engine of the truck was defective and stalled despite Scogins’ efficient and proper operation thereof. The stopping of the track in such a position clearly gives .rise to the inference of negligence on the part of its driver. Since the truck is shown to have been in good mechanical condition it appears certain that in the process of shifting gears Scogins either failed to properly manipulate the gears or neglected to synchronize his simultaneous efforts to shift gears and apply the gas thereby causing the truck’s engine to stop. Because of his negligence in this regard, the truck stalled causing the accident which ensued.
For the reasons hereinabove set forth, the judgment of the trial court is affirmed. Costs of this appeal to be paid by defendants-appellants.
Affirmed.