**LOUISIANA & ARKANSAS RAILWAY COMPANY, Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANY et al., Appellees.**

**No. 23788.**

United States Court of Appeals
Fifth Circuit.

June 22, 1967.

Arthur R. Carmody, Jr., Wilkinson, Lewis, Woods & Carmody, Shreveport, La., for appellant.

Leo Gold, Jimmy M. Stoker, Gold, Hall & Skye, Alexandria, La., for appellees, Leo J. Bonial and Fireman's Fund Insurance Co.

Robert B. Neblett, Jr., Neblett & Fuhrer, Alexandria, La., for appellees, Thomas Mathews, Milton Snow and French Unique Laundry & Cleaners.

Before HUTCHESON, GEWIN and GOLDBERG, Circuit Judges.

HUTCHESON, Circuit Judge:

Seventeen of its freight cars having been derailed when a train was brought to a sudden emergency halt in order to avoid colliding with a laundry truck stalled upon the railroad tracks, the appellant, Louisiana & Arkansas Railway Company, filed suit for damages [1] against the truck driver, his employer, and their insurer. The appellant alleged that the truck driver was negligent in having stalled the truck on the tracks. The appellees answered, denying negligence by the driver and asserting that it was the negligent operation of the train which had caused the derailment. The case was tried to the district court, sitting without a jury, which found that neither the truck driver nor the train operators had been guilty of negligence. Accordingly, it was ordered that the plaintiff take nothing, and the action was dismissed. We affirm.

On the morning of June 25, 1962, Leo J. Bonial was engaged in delivering laundry on his regular route through Rapides Parish in Louisiana. He was

---

1. The stipulated damages were $50,848.32.

driving a 1961 half-ton panel truck which had a standard stick shift. Bonial had turned off Louisiana Highway One and traversed the railroad tracks by means of a private road, as he had done many times before, to deliver laundry to the residence of Julian McNutt. After completing the delivery, Bonial turned the truck around to return to the railroad crossing. The road leading up to the crossing being on a slight incline, Bonial placed the truck in low gear. As he slowed to cross the tracks, the truck stalled and stopped directly astride the tracks. It is a matter of considerable dispute as to why the truck stalled.

Bonial got out of the truck and tried to push it off the tracks but was unable to do so because the wheels were lodged in holes which potted the crossing.[2] There was evidence that both the McNutt family and the railroad company previously had maintained the crossing. The truck was on the crossing approximately 3 to 5 minutes before Bonial noticed a train approaching from the south.

The northbound train, traveling about 41 to 42 miles per hour, was in route from New Orleans to Shreveport. Stretching out over a mile and a half of track, it was composed of a diesel engine unit and 171 freight cars, 43 of which were loaded. In the rural area surrounding the crossing, the tracks were straight and the train crew's visibility was not restricted. Bonial became aware of the train when it was a mile away; the crew saw the truck at a distance of 3/4 mile but assumed that it would move off the tracks and did nothing to slow the train. From one-half mile away, they observed Bonial attempting to push the truck from the tracks. Then he ran towards the train, waving his arms and trying to attract attention. Blowing the train's warning whistle, the crew proceeded to stop the train.

All the freight cars had standard railroad air brakes. Deceleration by a conventional application of the brakes would not have stopped the train for a mile, so the emergency brakes, by which the train could be stopped in a matter of seconds, were used. Fortunately, the train was halted some 25 to 50 feet short of the stalled truck. Unfortunately, however, the tremendous force released by the application of the emergency brakes and the resulting slack action in the long train caused the derailment of 17 cars. A passer-by helped Bonial push the truck off the tracks. It remained stalled for 3 to 5 minutes before Bonial was able to start it again.

The familiar rule that findings of fact from a nonjury trial will not be set aside unless clearly erroneous, F.R. Civ.P. 52(a), applies to a finding on the issue of negligence. See McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Stephens v. Osaka Mercantile Steamship Co., 328 F.2d 604 (5th Cir. 1964) (per curiam); Black v. Greyhound Corp., 314 F.2d 485 (5th Cir. 1963) (per curiam). Hence, the finding of the court below, that neither Bonial nor the railroad was negligent, must be affirmed unless we are left with the firm conviction that a mistake has been committed.

The main thrust of appellant's contentions is that the district court erred in failing to apply the doctrine of res ipsa loquitur ("the thing speaks for itself") to the facts of this case and infer that Bonial was negligent in stalling the truck. Under Louisiana law, which governs this diversity case, res ipsa loquitur applies where (a) the accident was caused by an instrumentality within the control of the defendant, (b) such an accident ordinarily does not occur in the absence of negligence, and (c) the evidence as to the true explanation of the accident is more readily accessible to the defendant than to the plaintiff. Northwestern Mut. Fire Ass'n v. Allain, 226 La. 788, 77 So.2d 395, 397, 49 A.L.R. 2d 362 (1954). The effect of the doctrine is procedural: it raises an inference of negligence which merely shifts the burden of going forward with the

---

2. The holes measured 3 inches in depth, 6 inches in width, and 9 inches in length.

evidence to the defendant. In a jury trial, its usual function is to allow the plaintiff to take his case to the jury which is then permitted, but not compelled, to accept the inference of negligence. See Prosser on Torts 211 (2d ed. 1955). However, when all the evidence is in, the question is still whether the plaintiff has proved the defendant's negligence by a preponderance of the evidence. Larkin v. State Farm Mut. Auto. Ins. Co., 233 La. 544, 97 So.2d 389, 391 (1957).

■■ As is generally done, the Louisiana courts are careful to confine the application of the doctrine to those circumstances for which it clearly is intended. See Day v. National United States Radiator Corp., 241 La. 288, 128 So.2d 660, 665 (1961). Because it presupposes that the accident would not have happened but for the negligence of the defendant, res ipsa loquitur will apply only where the circumstances of the accident leave no room for a presumption other than negligence on the part of the defendant. Therefore, it should not be invoked in the face of a competing reasonable inference that the accident was due to a cause other than defendant's negligence. See Pilie v. National Food Stores, 245 La. 276, 158 So.2d 162, 165 (1962); Larkin v. State Farm Mut. Ins. Co., 233 La. 544, 97 So.2d 389, 392–393 (1957); Minton v. Continental Ins. Co., 110 So.2d 789, 796 (1st La.App.1959).

Appellant argues that the mere fact that the truck stalled upon the tracks justifies an inference that it stalled either because Bonial had failed to properly shift gears or else had improperly manipulated the accelerator so as to flood the engine. We can quickly pass over the contention that the gears were improperly shifted because the record shows that Bonial never shifted the gears after first placing the truck in low gear when he began to ascend the incline.

■ With regard to the assertion that Bonial flooded the engine through improper manipulation of the accelerator, the evidence is inconclusive. Bonial stated on cross-examination that it was his best guess that the engine had flooded and caused the truck to stall, but he could not be certain. The trial judge noted that a week after the accident the fuel pump was leaking, and speculated that this defect may have caused the purported flooding. But he expressly found that the evidence simply did not indicate why the truck stalled. Consequently, it is plain that he also could not determine whether the engine was flooded, nor, assuming it was flooded, whether such flooding was caused by Bonial's allegedly negligent operation of the accelerator or instead by a defective fuel pump. In view of the several possible reasons for the truck's stopping on the tracks, none of which appear to overshadow the others, we cannot say that the circumstances of the accident so strongly point to negligence on Bonial's part as to warrant an inference of negligence against him. We are firmly convinced that this is not an appropriate case for the application of res ipsa loquitur.

The case on which appellant relies, New Orleans & N. E. R. R. Co. v. Scogins, 148 So.2d 909 (1st La.App.1963), is easily distinguishable from the one at bar. In finding negligence on the part of Scogins, who attempted to cross the tracks, the court stressed two points which are absent here. First, a warning signal began flashing when Scogins was virtually stopped some 6 to 10 feet from the tracks. Rather than remaining in a position of safety, he elected to proceed across the tracks in the teeth of the warning. Id. at 914. Second, Scogins was in the act of shifting the gears of a ponderous cement mixer, an operation which requires considerable skill; Bonial, on the other hand, did not shift gears. In our view, these two differences make the *Scogins* case inapplicable to the one here. Compare Smith and Wheat v. New Orleans & N. E. R. R. Co., 153 So.2d 533 (1st La.App.1963), aff'd 245 La. 1099, 163 So.2d 65 (1964).

We hold that the district court's finding that the accident was not the result of negligence by either party is not clearly erroneous. The judgment dismissing appellant's action was right. It is affirmed.