SAMUEL, Judge.
This is a suit for the alleged wrongful death of plaintiff’s son, Allen J. Lamb, who was killed when struck by the locomotive of a Louisville & Nashville passenger train. Named defendants in the petition are: (1) Louisville & Nashville Railroad Company; (2) the locomotive engineer of the train involved in the accident; (3) Alton A. Glapion, d/b/a Glapion Funeral Home, a funeral director; and (4) United States Casualty Company, Glapion’s insurer. United States Casualty was dismissed from the suit by summary judgment (affirmed by this court in Jenkins v. Harper, 183 So.2d 53) and thereafter the matter was tried on the merits only as to the remaining three defendants. After trial there was judgment in favor of defendants and against the plaintiff, dismissing the suit at her cost. Plaintiff has appealed.
Plaintiff’s original and amended petitions allege the defendants railroad and Glapion illegally induced her to sign a purported release of her claim against the railroad for $600. Her suit against Glapion is based solely on that defendant’s alleged actions in obtaining the release, which she seeks to have declared null and void. Her action against the railroad and its engineer is based on their alleged negligence.
In his reasons for judgment the trial judge stated: “While the over-zealous actions of the agent for the railroad in settling this case might be subject to criticism, the Court nevertheless finds the settlement agreement to be a complete bar to claims of plaintiff. * * *. Furthermore, even if the release would be set aside, the Court fails to find any negligence on the part of defendants under the evidence adduced at the trial.”
These same two questions, the validity of the release and the negligence, if any, of the railroad, are presented for our consideration. We prefer to discuss and decide the second question first; for if *281 there was no negligence on the part of the railroad, plaintiff cannot recover against any of the three defendants even if the release is invalid and without effect.
At the time of his death the decedent was 27 years of age. He was killed when a part of the locomotive struck him on the left side of the head with the blow starting from the rear of the head and coming forward towards the face. The accident occurred on July 13, 1964, a clear day, at about 10:20 a. m. in the Parish of Orleans near what is known as Nine Mile Post and about one-half mile north of the Gentilly crossing. After the accident the body was about 10 feet from the track and something less than a mile from the stopped train. The sole eye witness was the defendant-engineer; his testimony is the only evidence contained in the record relative to how the accident occurred.
The engineer testified as follows: The train, which consisted of three locomotives and eighteen cars, was proceeding to New Orleans at a scheduled speed of 70 miles per hour. The engineer was on the right, or west, side of the cab of the lead locomotive. He first saw the decedent when the latter was about one-half mile away walking parallel to the west side of the track in the same direction as the train was traveling. At that time the decedent was in the clear, i. e., a sufficient distance from the track so that there was no danger of a collision. He sounded a long blast of his horn to warn the decedent of the approaching train and the decedent turned around in response to the warning. He began applying his brakes, not because the decedent was in any danger, but for the purpose of slowing down for the Gentilly Yard. The decedent then turned again so that his back was to the train. When the locomotive was about SO yards away and traveling about 40 or SO miles per hour, the decedent began to move in a weaving or staggering motion. At that time the train’s brakes were again applied and left on, and the horn was sounded in short, quick blasts. There was a short period, beginning approximately 15 feet before the locomotive began passing the decedent, during which the engineer could not see objects as close to the track as was the decedent. At the end of this short period the engineer looked for the decedent but didn’t see him. He remarked to his helper that the decedent might have been struck by the locomotive. When the engine came to a stop he and the helper got off the left side. They found some blood on the corner of a walkway at the right front of the locomotive.
Plaintiff contends the defendant railroad was negligent in the following respects: (1) a speed of 70 miles per hour in the particular area involved was so excessive as to constitute negligence per se; (2) despite his testimony to the contrary, the engineer failed to sound the locomotive horn; and (3) the decedent was struck by an angle iron protruding from the side of the locomotive and the operation of the locomotive with such an object so protruding constituted negligence.
In open country any speed consistent with the safety of the train is permissible. Smith v. New Orleans & Northeastern Railroad Co., La.App., 153 So.2d 533; New Orleans & Northeastern Railroad Co. v. Scogins, La.App., 148 So.2d 909; Texas & Pacific Railway Company v. LaBorde, 5 Cir., 257 F.2d 587. In the instant case plaintiff has not called our attention to any statutory law or regulation setting a speed limit of less than 70 miles per hour. The only regulation involved is that of the defendant railroad which permitted such a speed. The evidence establishes that the railroad right of way where the accident occurred is straight with high bushes and weeds on both sides. Some distance from the point where the impact occured there is a road which dead ends at the right of way and there are some 20 to 30 houses fronting on that road. On the opposite side of the right of way, but some distance away and across the new Highway 90, there is a *282 small shopping center. Under these circumstances we cannot and do not hold that a speed of 70 miles per hour constituted negligence in itself.
Nor do we agree with plaintiff’s second contention, that the engineer failed to sound the locomotive horn. The only-evidence on this subject was given by the engineer, whose testimony we have set out above, and by two witnesses who lived in the vicinity where the accident occurred. One of those witnesses testified he was in his home at the time of the occurrence and did not recall whether he had heard whistles, bells or an application of the train brakes. The other, a railroad employee who was called as a plaintiff witness, testified he heard the train whistle blow a distress signal, i. e., repeated soundings of the whistle or horn, apparently just before the accident occurred. Thus the evidence upon which plaintiff relies to disprove the engineer’s testimony relative to sounding the horn fails to do so in connection with the negative testimony of the first mentioned witness, and the second witness corroborates the testimony of the engineer.
We also find plaintiff’s third contention, that the decedent was struck by an angle iron protruding from the side of the locomotive and the operation of the locomotive with such an object so protruding constituted negligence, is without merit. There is some doubt as to what part of the locomotive actually struck the decedent. Two witnesses testified relative to that question. One, a plaintiff witness, was a police officer who investigated the accident. He testified that, as shown by the blood on the object, the decedent was struck by “ * * * a sort of an angle iron on the right side of the engine * * *” which carried the bottom portion of the sliding door, was about 5 feet above the track, and protruded about 4 or 5 inches from the side of the engine itself. The engineer testified that, also as shown by the blood thereon, the decedent was struck by the forward part of a walkway used for the purpose of walking around the nose of the locomotive and that this walkway iron does not protrude farther out to the side than the remainder of the engine.
We find the engineer’s explanation as to the part of the locomotive which struck the decedent to be more probably correct. However, in either case we find there was no object protruding over the side of the locomotive other than an integral part of the locomotive itself. The record is devoid of any evidence to the effect that the engine was improperly constructed in any manner.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.