220 So.2d 563 (1969)
Mr. and Mrs. Ignace THERIOT
v.
TEXAS AND NEW ORLEANS RAILROAD COMPANY et al.
No. 3344.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1969.
Rehearing Denied April 7, 1969.
Writ Refused June 9, 1969.
*564 Simon & Simon, Warren M. Simon, Jr., New Orleans, and Leon C. Vial, III, Hahnville, for plaintiffs-appellees.
Chaffe, McCall, Phillips, Burke, Toler & Sarpy, Harry McCall, Jr., and Jarrell E. Godfrey, Jr., New Orleans, for defendants-appellants.
Before YARRUT, HALL and GARDINER, JJ.
HALL, Judge.
Mr. and Mrs. Ignace Theriot brought this suit to recover damages for the death of their two sons, the wives of their two sons, and three minor grandchildren, children of their sons. All of these decedents were occupants of an automobile which was struck by a Texas and New Orleans Railroad Company (Southern Pacific Company) passenger train shortly before noon *565 on Easter Sunday, April 14, 1963 at the Barton Avenue crossing in St. Charles Parish. All of the occupants of the automobile, except plaintiffs' two sons were killed instantly. Plaintiffs' two sons died in the ambulance on the way to the hospital. Suit was brought against the railroad company and Harold Mitchell, the train engineer, in solido.
The case was tried before a jury which rendered a unanimous verdict in plaintiffs' favor against both defendants in solido in the sum of $36,000.00. Judgment was entered in accordance with the jury's verdict and defendants appealed.
Plaintiffs alleged that the accident was caused by the negligence of the train engineer in operating the train at an excessive and dangerous rate of speed without keeping a proper lookout and in failing to sound a whistle, bell or to give any other warning of its approach. Plaintiffs further charge negligence on the part of the railroad company in failing to keep the crossing in a proper and safe condition for the use of the general public in that the view of the tracks by one lawfully using said crossing was obscured by high weeds, trees and shrubbery and a billboard sign.
Defendants answered alleging that the accident was due solely to the negligence of the driver of the automobile and alternatively alleged contributory negligence on the part of the automobile driver and its occupants.
The sole issue before us is whether the verdict of the jury is contrary to the law and the evidence.
Barton Avenue is a black topped secondary road which runs north and south and connects the River Road on the north with Highway 90 on the south. Highway 90 is a multilane highway divided by a neutral ground and in this area runs in an east-west direction. Barton Avenue enters the highway approximately three miles east of Boutte. The tracks of the defendant railroad company run in an east-west direction and lie parallel to and approximately one hundred feet north of Highway 90. They cross Barton Avenue at approximately a right angle. The tracks are straight for a considerable distance on each side of the crossing.
On the day of the accident the sun was shining, the visibility was good and the roads were dry. The automobile involved in the accident which had been travelling east on Highway 90 made a left turn into Barton Avenue along which it proceeded at a low rate of speed and was in the process of crossing the railroad tracks when it was hit on the right rear by defendants' train which was proceeding west from New Orleans to Lafayette.

Speed of Train
The engineer testified that the train had been travelling at 75 miles per hour for several miles before reaching the crossing and was travelling at that speed when he applied the emergency brakes just before the collision. In addition to the engineer's testimony the speed tape was introduced in evidence and examined by both plaintiffs' and defendants' expert witnesses. Defendants' expert witness, Mr. T. J. Womack, testified that according to the speed tape the train had been travelling at 75 miles per hour for 1¾ miles prior to the emergency brakes being applied. Plaintiffs through their expert, Mr. Robert L. Richardson, attempted to show that the train was travelling in excess of the 75 mile speed limit imposed by the railroad company's rules. Mr. Richardson, a chemical engineer who had never read a speed tape before, testified that the tape revealed the speed of the train to have been in excess of 75 miles per hour. Mr. Richardson arrived at his conclusion by first determining that the Barton Avenue crossing was 21.2 miles from the station in New Orleans. He then scaled a distance of 21.2 miles from the commencement of the tape recording and concluded the speed shown at this point was the train's speed immediately prior to the accident. However, it *566 was brought out on cross-examination that Mr. Richardson's calculations did not take into consideration the fact that the speed tape recorded backward movement as well as forward movement and Mr. Richardson admitted that if this were so it would alter his conclusions. Mr. Womack testified that the tape would and did record a backing movement of the train between the roundhouse and the station in New Orleans and this distance had to be taken into consideration in reading the tape.

Signals
The engineer testified that just before reaching the whistling board, 1300 feet in advance of the crossing, he began his regular crossing signal consisting of two long blasts, one short blast and a long blast and that he continued to blow the horn through the crossing. The engineer's testimony as to this is confirmed by the disinterested witnesses, Granier, Gravois and Elklund and is uncontradicted. The uncontradicted testimony also shows that the engine headlight and mars (oscillating) light were both burning brightly, the engine bell had been set ringing automatically and the train itself was making considerable noise.

Nature of Crossing
The plats of the crossing and the photographs taken thereof show that the crossing where the accident occurred was in a sparsely settled rural area, virtually open country. Plaintiffs challenge this by citing a record of the Louisiana Department of Highway, Traffic and Planning Division, which shows that a traffic count at this crossing conducted on May 26, 1961 between the hours of 7:00 and 11:00 A.M. revealed that 218 automobiles completed the crossing. We are of the opinion that a traffic count on a particular date does not change the character of the area. In this connection it is interesting to note that this Court in Hymel v. Texas and New Orleans Railroad Company, 145 So.2d 138, 141, characterized this same crossing as being in a "rural area".

Obstruction to View
Plaintiffs charge the defendant railroad company with negligence in maintaining the crossing, particularly in that there was obstruction to the view of an approaching motorist.
The record reveals that there are some trees and shrubbery between Highway 90 and the railroad tracks but the trees and shrubbery are located approximately 150 feet east of Barton Avenue. The record also reveals that the distance from Highway 90 to the crossing is approximately 90 feet and that there is a "For Sale" sign 8' × 8' × 8½' located approximately 80 feet east of Barton Avenue and approximately half way between Highway 90 and the tracks. The plats and photographs in the record show that the trees and shrubbery offer no obstruction to view from an automobile after it has travelled approximately 10 feet into Barton Avenue from Highway 90. From this point the tracks are clearly visible for a distance of approximately 500 feet east of the crossing. The sign offers a momentary obstruction to view from an automobile when it is between 40 and 50 feet from the tracks. Once past this point there is no obstruction. At a distance of 15 feet from the track the driver of an automobile has an unlimited view of the tracks to the east of the crossing as far as the eye can see.
Between Highway 90 and the crossing there is a "cross buck" sign and a "Louisiana Law Stop" sign on the east side of Barton Avenue.
It is pertinent to remark here that LSA-R.S. 32:171 provides that whenever any person driving a motor vehicle approaches a railroad grade crossing the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail whenever a railroad train approaching within approximately 900 feet of the crossing emits a signal in accordance with LSA-R.S. 45:561 or when an approaching train is plainly visible and is in hazardous proximity to such crossing.

*567 Lookout

Plaintiffs' remaining allegations of negligence are that those in charge of the engine failed to maintain a proper lookout and to recognize the emergency and take precautions to avoid the collision.
Occupying the engine was a fireman and an engineer. The fireman was seated on the left side or the side closest to Highway 90. His sole responsibility was to observe and act as a lookout. The engineer was seated on the right side of the engine and had no view to the left. His only view was of the track straight ahead of him and the area to his right. The fireman's view was straight ahead and to the left of the engine.
The fireman, Mr. Steinwinder, testified that he first saw the automobile when it had just turned off Highway 90 onto Barton Avenue and was about 75 to 80 feet from the track; that the train was then 400 to 500 feet from the crossing; that he immediately called to the engineer "car on the left" and pointed, this being a signal to the engineer to give a few short blasts on the horn to call the motorist's attention, which he did; that he continued to watch the car, which was not going fast, expecting it to stop; that when he realized the car was not going to stop he shouted to the engineer to "hold it", meaning to apply the emergency brakes; that the car was then 15 to 20 feet from the rail; that the engineer immediately applied the emergency brakes. Mr. Steinwinder did not know how far the train was from the crossing at this time but the train could not be stopped in such a short distance and the accident happened.
Several witnesses testified that the car did not stop once it turned onto Barton Avenue.
Plaintiffs' allegation of failure to maintain a proper lookout rests entirely on the testimony of a Mr. Granier who testified that both occupants of the engine cab waved to his daughters as he was driving along Highway 90 in the same direction as the train. In the first place it is highly improbable that both occupants of the cab waved to the children as it was impossible for the engineer to wave from the left side of the cab. Moreover, Mr. Granier testified that before the waving took place he had seen the Theriot automobile in the act of making a left turn across Highway 90 preparatory to entering Barton Avenue which would indicate the waving took place when Mr. Granier and the train were some distance east of Barton Avenue. Mr. Granier's testimony does not in any way detract from the fireman's testimony that he observed the Theriot automobile when it had travelled only 10 to 15 feet into Barton Avenue.
Plaintiffs contend that the engineer did not timely apply the emergency brakes.
In this connection defendants adduced the testimony of Mr. T. J. Womack who was accepted by the Court as an expert in the field of locomotive air brakes and who had made tests on the functioning of air brake systems and stopping trains. Mr. Womack testified that at 75 miles an hour there would be no reduction in the speed of the train for the first four seconds after the brake valve is placed in emergency. It takes this time to build up sufficient pressure in the brake cylinders to overcome the amount of energy developed by the speed of the train. He further testified that if a train is going 75 miles per hour it would travel 3,650 feet before stopping once the emergency brakes were actually applied; that this distance does not include perception time nor reaction time; that the train would travel an additional 165 feet during perception and reaction time. Since a train at 75 miles per hour travels 110 feet per second the train would travel 440 feet during the 4 seconds it takes the brakes to begin to slow the train. Add to this the perception time and the reaction time the train would have travelled 600 feet before the brakes began to take effect. Mr. Womack testified that if the emergency was recognized by the fireman any closer to the *568 crossing than 600 feet there was no way the speed of the train could have been reduced before it reached the crossing.
As we have seen the fireman observed the Theriot automobile when it was first getting into Barton Avenue and was approximately 75 to 80 feet from the tracks. At this time the train was 400 to 500 feet from the crossing. There was no reason for the fireman to suspect that an emergency situation existed at this time but even had the emergency brake been applied at this time the accident could not have been avoided because the train would have reached the crossing before the brakes took effect.

Negligence of the Automobile Driver
Plaintiffs attempted to prove through the testimony of Norman J. Romaguera, then a Lieutenant of State Police, that when an automobile travelling north on Barton Avenue gets within 50 feet of the tracks the driver would have to look straight ahead or he would run off the road due to the condition of Barton Avenue and the height of the tracks. However Lt. Clouatre testified he had no difficulty in going over the crossing while maintaining a lookout for trains, and the photograph of the crossing introduced in evidence belies Lt. Romaguera's testimony. The photograph shows a clear black topped road which inclines gently from Highway 90 to and over the tracks. The record shows that the tracks are only four feet higher than the level of Highway 90. We do not find that the crossing constituted a "dangerous trap" by reason of obstructions to view, construction or condition of the crossing or anything else.
The accident occurred on a clear day in broad daylight and there was nothing to prevent the driver and occupants of the Theriot automobile from observing the approaching train from a position of safety clear of the track if they had looked. Even if they did not look there is no valid reason why they could not have heard it approaching as all witnesses testified unequivocally that the engine horn was sounding loud and clear repeatedly and well in advance of the crossing. In addition the automatic bell was ringing and the train itself was making a good deal of noise. From all accounts the Theriot automobile was proceeding at a slow rate of speed and if the driver had been attentive and stopped where LSA-R.S. 32:171 obliged him to stop the accident would not have occurred.
"* * * It is settled jurisprudence in this state that in open country and sparsely settled rural areas there is no legal restriction upon the speed of railway trains and in such areas trains may be operated at any speed consistent with the safety of the train, its passengers and crew. Houston v. Vicksburg, S. & P. R. Co., 39 La. Ann. 796, 2 So. 562; New Orleans and Northeastern Railroad Company v. Scogins, La.App., 148 So.2d 909. The `open country doctrine' further sanctions the proposition that in sparsely settled rural areas trains are not required to be operated at such speeds they may be stopped within the range of vision of the engine crew. See New Orleans & Northeastern Railroad Company v. Scogins, supra, and cases therein cited." Smith v. New Orleans & N. E. R. Co., 153 So.2d 533, 537, La.App.1963, affd. sub nom. Wheat v. New Orleans & N. E. R. Co., 245 La. 1099, 163 So.2d 65, 1964.
"The jurisprudence is uniform that those in charge of railroad trains may presume that an individual or vehicle approaching a crossing will stop in time to avoid an accident; and the crew is not required even to attempt to stop unless there is reason to believe the approaching motorist is unaware of the oncoming train or does not intend to stop; and a motorist must exercise every sense to ascertain if it is safe to cross. (Citing authorities)" Hymel v. Texas & N. O. R. Co., 145 So.2d 138, 140, La.App.1962.
"* * * The crew members had the absolute right to believe that plaintiff *569 would obey the law and bring his vehicle to a stop and then look and discover the approach of the train. The members of a train crew are not negligent in indulging in the assumption that a motorist approaching the track will bring his vehicle to a stop, and there is no negligence even when they persist in such reasonable belief until it is no longer in their power to avoid the accident. (Citing authorities)." Parks v. Texas PacificM. P. Terminal R. Co., 152 So.2d 845, 849, La. App.1963.
"* * * The only knowledge of danger came at the last instant when defendant's brakeman observed that the driver was not going to stop. At this time it was evident that defendant's employees were not possessed of the ability to avoid the accident. Members of a train crew are not negligent in assuming that the operator of an automobile approaching the tracks will bring the vehicle to a stop, and there is no negligence even when they persist in such a reasonable belief until it is no longer in their power to avoid the accident. Bordenave v. Texas & N. O. R. Co., La.App., 46 So. 2d 525." Hanks v. Arkansas & L. M. Ry. Co., 62 So.2d 139, 146, La.App.1952.
"The general rule is that a motorist approaching a railroad crossing must use his senses of sight and hearing for possible oncoming trains before traversing the crossing. Tucker v. Illinois Cent. R. Co., 141 La. 1096, 76 So. 212 (1917); Rachal v. Texas & P. Ry. Co., 61 So.2d 525 (La.App.2d Cir. 1952); Matthews v. New Orleans Terminal Co., 45 So.2d 547 (La. App., Orl.1950).
"A motorist negotiating a railroad crossing is burdened with the responsibility of seeing and hearing that which he could have seen and heard, and he is presumed, in law, to have seen and heard what he could have seen and heard * * *." Kavanaugh v. Travelers Insurance Co., 203 So.2d 780, 783, La.App. 1967.
To the same effect, see Glisson v. Missouri P. R. Co., 158 So.2d 875, 878, La.App. 1963, affd. 246 La. 470, 165 So.2d 289, 1964; Sule v. Missouri P. R. Co., 181 So.2d 280, 283, La.App.1965.
"Assuming arguendo, that decedent could not see the train coming, he should have heard the approach of the train, as four disinterested witnesses heard the bell and whistle when the train was quite a distance from the crossing.
"Even if there were obstructions such as to prevent decedent's being able to see down the tracks to his right as he proceeded towards the tracks, the greater duty was placed upon him to ascertain there were no trains in the vicinity. (Citing authorities.)" Hymel v. Texas & New Orleans Railroad Company, 145 So.2d 138.
We are of the opinion after a careful review of the record that plaintiffs have utterly failed to prove any negligence on the part of either the railroad company or the engineer and that the sole proximate cause of the accident was the negligence of the driver of the Theriot automobile. The record, in our opinion, does not support the verdict of the jury and we find the verdict to be manifestly erroneous.
For the foregoing reasons the judgment appealed from is reversed and judgment is now rendered in favor of the defendants, Texas and New Orleans Railroad Company (Southern Pacific Company) and Harold Mitchell, and against the plaintiffs, Mr. and Mrs. Ignace Theriot, rejecting said plaintiffs' demands and dismissing their suit at their cost; costs of this appeal to be borne by plaintiffs-appellees.
Reversed and rendered.