HAWTHORNE, Justice.
Plaintiff-relator Elmer L. Wheat instituted suit to recover for personal injuries allegedly sustained as a result of a collision of a passenger train and an automobile which he was driving. Plaintiff-relator Cleve T. Smith, owner of the car, in a separate suit seeks judgment for the value of the automobile, which was completely demolished in the collision. Various parties were named defendants, but both suits were dismissed by plaintiffs as to all parties defendant except New Orleans & Northeastern Railroad Company and General Motors Corporation. The two suits were consolidated for trial in the district court, and for argument in the Court of Appeal and in this court. The district court rendered judgments dismissing both suits, and the Court of Appeal affirmed. See Smith v. New Orleans & Northeastern Railroad Co., 153 So.2d 533, and Wheat v. New Orleans & Northeastern Railroad Co., 153 So.2d 543. On application of plaintiffs this court granted certiorari, 244 La. 1018, 156 So.2d 225, for the limited purpose of reviewing the holding of the Court of Appeal that plaintiffs had failed to prove any negligence on the part of the railroad.[1]
*1104 Plaintiffs in their petitions alleged numerous acts of negligence by the railroad, such as failure to ring the bell, blow the whistle, and sound the horn; failure of those operating the train to keep a proper lookout; operating the train at an excessive speed, and failure to maintain the crossing where the collision occurred in a safe condition. Both the district court and the Court of Appeal concluded, and we think correctly, that the plaintiffs had failed to prove the railroad negligent in any of these respects. The plaintiffs also alleged that the defendant’s employees were negligent in failing to bring the train to a stop after the presence of the car on the track was discovered. Both courts below concluded that plaintiffs had likewise failed to prove this allegation of negligence. It was to consider this last allegation of negligence that we granted certiorari.
. The facts concerned in the accident are set out in detail .in .the Court of Appeal’s opinion. Briefly, .they are: The automobile driven by plaintiff Wheat, who was alone in it, stalled on the track at a country crossing of the defendant railroad and a gravel road, and his efforts to start the car were unsuccessful. The car was struck by a passenger train consisting of an engine and six cars operated by the defendant railroad, and was completely demolished. The collision happened on a clear night, the crossing where it occurred was in open country, and the railroad both north and south of this crossing was perfectly straight. The car’s lights were not on. The train was equipped with two headlights, one stationary and one oscillating, and both were burning. The bell of the train was being operated automatically, and whistle warnings were given from the time the car was sighted up to the moment of impact. Wheat testified that before he drove onto the crossing, he stopped and looked but did not see the train; that he proceeded onto the crossing, where the motor of the car stopped or failed; that he tried repeatedly to get the car started; that he was unaware of the approaching train rtntil it was approximately two feet from the automobile; [2] that he reached for the door handle in an effort to “bail out”, and that this was the last thing he remembered. As stated previously, the car was completely demolished, and in fact was shoved along the track for a distance of approximately 175 feet. The passenger train was being operated at a legal speed, about 55 or 60 miles per hour, and the engineer and the fireman saw the car on the track at the extreme range of the train’s headlights, about 900 or 1000 feet from the crossing. At approximately 600 to 700 feet from the crossing the engineer applied the brakes with heavy pressure, but the train nevertheless struck the stalled vehicle and *1106 came to a stop with the rear car about 900 feet beyond the crossing.
The railroad denies that it was in any way negligent. In addition, it contends that plaintiff Wheat was not in the automobile at the time it was struck, relying on the testimony of its fireman that no one was in the car, that immediately before the collision he saw someone making an effort to push the car off the track, and that this person ran away from the automobile just before the car was hit by the train.[3] In support of this testimony defendant calls attention to the testimony of the physician who examined Wheat on the night of the accident, who stated that Wheat had sustained no broken bones, cuts, or lacerations, that there were no bruises on his body, that he was fully conscious, and that his only complaint was that he had a stiff or rigid neck. The railroad argues that due to the terrific impact of the train with the car, if Wheat had been in the car, he would have sustained substantial and severe physical injuries. However, in view of our holding in this case it is not necessary to discuss this contention of the railroad with regard to plaintiff Wheat.
Our determination of whether the defendant railroad was negligent requires that we define the duty of the defendant’s engineer under the facts and circumstances of this case, and the standard of care owed to the plaintiffs.
Our first inquiry is: When should the engineer have realized that an accident was imminent, and have commenced taking steps to avoid the accident?
It is plaintiffs-relators’ contention that the engineer was negligent in not taking steps to stop the train the first moment he saw the automobile on the track. As stated previously, the automobile was first visible to the engineer when it was picked up by the beam of the train’s headlights 900 to 1000 feet from the crossing. We do not think that at this point the engineer was under any duty to make an effort to stop the train, or that the standard of care required it The engineer gave his reason for not applying the brakes at the moment the car first became visible to him, thus: “All right, now then, you’re the engineer on one of these diesel trains and these automobiles drive up on these crossings, if I were to apply the brakes every time I saw an automobile come up on the trussle, I would have to apply the brakes at practically every trussle. In my judgment, I watch them, and if they can get across there, there’s no danger, and which they do. They go up there and you swear they’re not gonna get across, but they do.”
*1108 The reasonable rule in such a case is that the engineer when sighting a person or a vehicle on the track can presume that he or it will move from the position of danger upon the sounding of the train’s bell or the blowing of its whistle or horn; that it is only when the engineer realizes that the warnings are not going to be heeded that he should make an effort to stop the train. This rule is recognized and approved throughout the country. 'For instance, a New York case states the rule thus:
“ * * * a locomotive engineer, seeing a person on the’ track at a time when his train is perfectly visible, may assume that such person will leave the track in time to escape injury, and, without imputation of negligence, may continue his run until he discovers that the person is heedless of danger. * * * ” Fierro v. New York Cent. R. Co., 256 N.Y. 446, 176 N.E. 834. (Italics here and elsewhere are ours.)
This rule applies not only to persons but also to automobiles on the tracks, as shown by the following quotations:
“ * * * The operatives of the train had a right to presume that Beatty would drive his automobile off the track and avert a collision, and only when it became evident that he was not going to do so did it become their duty * * * to stop the train.” Beatty v. Thompson, 176 S.W.2d 795 (Tex.Civ.App.).
“Although the engineer was required to be reasonably alert and watchful as the train approached the crossing, it was not his duty to stop the train the instant he became aware that an automobile was partially across its track * * *. He was not required to act until the peril first became apparent.” Rutkowski v. Lehigh Valley R. Co., 247 App.Div. 575, 288 N.Y.S. 194.
Relators point out that the headlights of this car were not oh, and argue that this should have made the engineer realize immediately that the vehicle must have been on the track for some moments and thus should have pointed unmistakably to the motorist’s peril. '
The condition of a car on the track can be such as to cause the engineer to realize immediately that an accident is going to happen if he does not take steps to avoid it. In Lee v. Pennsylvania R. Co., 269 N.Y. 53, 198 N.E. 629, for instance, the car was overturned on the track; and this fact would take it out of the ordinary rule, said the New York court, because the object would necessarily remain where it was located until removed.
The absence of carlights, however, would not bring this kind of immediate realization that the car would have to be removed from the track. The relators are asking the court to judge the engineer’s reaction by hindsight: We now know that the automobile was stalled, and by the fact that the headlights were not burning we are asked to say that the engineer should *1110 have immediately realized the car’s helpless condition at the time. What was said in Lawrence v. Bamberger Railroad Company, 3 Utah 2d 247, 282 P.2d 335, would appear to be appropriate here:
“ * * * It is indeed possible that if the motorman had been a person of unusual perspicacity he might have guessed that something was wrong at an earlier instant. But even though extraordinary skill, caution and foresight are to be admired, the law does not demand such standard of conduct. The test is to be applied on the basis of foresight and not of hindsight. That is, as the picture appeared to the motorman at the time, did his conduct meet the standard of care for the ordinary, reasonable and prudent person under the circumstances, which includes his skill and experience as a motorman. * * * ”
We conclude, therefore, that the engineer was not negligent in failing to realize that the automobile was not going to move off the track at the first moment it came within his vision, and therefore was not negligent in failing to take steps to stop the train at that moment.
The next inquiry is: What was the duty of the engineer and what standard of care was required of him under the facts and circumstances of the case when he realized that the accident was imminent?
In considering this phase of the case we must bear in mind that we are dealing here with a passenger train, and that the railroad in such a case must exercise the utmost care for the safety of the passengers, its first duty being to transport the passengers in safety. In discussing the duty of operators of passenger trains and the degree of care required of them the courts of other states have said:
“ * * * The defendant owed to its passengers the first duty, and that was to exercise the utmost care for their safety. To the plaintiff it owed the duty of exercising ordinary care. * * * ” Lucchese v. San Francisco Sacramento R. Co., 106 Cal.App. 242, 289 P. 188.
“ * * * In his care rests the security of thousands of passengers who, above every other consideration, must be protected from collision or derailment. * * * ” Fierro v. New York Cent. R. Co., supra.
“ * * * when persons are discovered on the track, it is the duty of those operating the engine to exercise reasonable care to avoid striking or injuring persons or property.” Missouri Pac. R. Co. v. Mitchell, 197 Ark. 400, 122 S.W.2d 544.
“ * * * When the engineer saw and appreciated the peril, it was his duty to use every reasonable means to prevent the collision. * * * ” Mississippi Cent. R. Co. v. Aultman, 173 Miss. 622, 160 So. 737.
“After discovering and realizing that the automobile was in * * * a position of peril, the operatives of appellant’s train *1112 were under the duty of exercising reasonable care in the use of all means at their command, consistent with their own safety and that of the train and its passengers, to avoid the ensuing collision. * * * ” Texas & N. O. R. Co. v. Foster, 266 S.W.2d 206 (Tex.Civ.App.).
On this question the Court of Appeal of our own state in Hymel v. Texas & New Orleans Railroad Company, 145 So.2d 138 (1962), had this to say:
“If railroad trains in the rural areas are required to slow down at every crossing, ánd to make emergency stops to avoid collisions with approaching motorists, countless passengers and crew members could .very well suffer the loss of life and limb, 'and the railroad subjected to countless and expensive litigation.
“Neither the law nor the jurisprudence ’puts this intolerable burden on railroads.”
We conclude, therefore, that the engineer’s first duty was to his passengers and as to them he. was required to exercise the utmost care, and he owed to the plaintiffs in this case the duty of exercising ordinary care; and that after the engineer realized that the automobile was in a position of peril, he was required under this duty to use every reasonable means, with due regard to the safety of his passengers, to avoid the collision.
He applied the brakes after the train had proceeded "at 55 or 60 miles per hour for about 300 or 400 feet, at the moment he realized that despite the warning bells and whistles the car was not going to be moved from the track. It will thus be seen that he applied the brakes within less than five seconds of the moment when he first saw the car. According to his testimony he acted at that time in the following manner: “In the first place, I broke extremely heavy the first time and the car still would have had a chance to get off of it, I broke heavy. * * * I mean I applied the brakes just as hard as I could.”
Plaintiffs-relators contend that the engineer in failing to make an emergency application of the brakes did not exercise the proper care. The engineer in this case testified that he applied the brakes as hard as he could without going into emergency. Since the passenger train was travelling 55 or 60 miles per hour, to require the emergency application of the brakes under the facts of this case would oblige the engineer to completely disregard the duty of care imposed on him for the safety of his passengers.
Under the circumstances of this case we consider that the engineer discharged the duty of reasonable care when he applied the brakes as hard as he could upon realizing the imminence of the collision, and that he did not breach that duty of reasonable care by failing to make an emergency' application of the brakes.
*1114 Furthermore, even if we should require a higher degree of care of the engineer to these plaintiffs, there is not one scintilla of evidence in this record that the passenger train could have stopped in time to prevent the collision had there been an emergency application of the brakes when the train was only 600 feet away. To say that an emergency application of the brakes could have stopped the train in time to avoid the collision would be nothing more than an assumption on our part. Thus proof is lacking that failure to make an emergency application of the brakes caused the accident.
It is an elementary rule that he who alleges negligence must prove it, and there is no reason why an exception to the rule should be made in a case where the plaintiff alleges the negligence of a railroad in a damage suit resulting from a collision of a train with the plaintiff’s car at a railroad crossing. In fact, the jurisprudence makes it clear that this rule applies in railroad collision cases.
“The mere happening of an accident does not raise the presumption of negligence on the part of a railroad company. The negligence of the company must be proved with certainty, and it must be shown that such negligence was the proximate cause of the accident. * * * ” Nolan v. Illinois Cent. R. Co., 145 La. 483, 82 So. 590; see also Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646.
“The burden is on plaintiffs, suing to recover damages resulting from a collision between an automobile and a fast-moving train at a public road crossing of a railroad, to prove that the persons in control of the train were negligent, and that their negligence was the proximate cause of the collision.” Lanier v. Missouri Pac. R. Co., 9 La.App. 586, 119 So. 710.
“In a railroad crossing accident caused by collision of an automobile and a train, the burden is upon the plaintiff to affirmatively prove the allegations of negligence charged in the petition.” Toups v. Morgan’s Louisiana & Texas Railroad & Steamship Company, 4 La.App. 136.
Plaintiffs in the instant case, having alleged the negligence of the defendant railroad, have the burden of proving that negligence. This they have utterly failed to do. The evidence shows that the engineer did everything a reasonable, prudent man would do in the circumstances, and that his conduct and actions conformed to the standard of care usually required in such cases.
For the reasons assigned the judgments of the Court of Appeal, First Circuit, in the cases of Smith v. New Orleans & Northeastern Railroad Company, La.App., 153 So.2d 533, No. 5841 on the docket of that court, and Wheat v. New Orleans & Northeastern Railroad Company, La.App., *1116 153 So.2d 543, No. 5842 on the docket of that court, affirming the judgments of the district court which rejected the demands of both plaintiffs against the defendant railroad, are affirmed. Relators are to pay all costs.
McCALEB, J., concurs in the result.
SANDERS, J., dissents with written reasons.

. The judgments in favor of General Motors Corporation are final.

. The ear windows were rolled down; and it is not contended that Wheat did not possess normal sight and hearing.

. Wheat was alone in the car, and there were no witnesses to the collision except Wheat and the trainmen.