MORIAL, Judge.
This is an appeal from a district court judgment finding no negligence on the part of a railroad or its engineer in causing or contributing to a train-automobile collision.
On December 24, 1974 at approximately 9:20 A.M. an accident occurred at the intersection of La. Highway 44 and the Louisiana ahd Arkansas Railway Company’s tracks in LaPlace. Plaintiff, Morris Wade Cooper, was driving his automobile in a northerly direction with his two minor sons in the rear seat when the automobile stalled on the railroad tracks and was thereafter struck by a train owned by defendant, Louisiana and Arkansas Railway Company, and operated by defendant-engineer, T. A. Butcher, and crew members Leo Akens and Charles Difulco.
Plaintiff filed suit individually and as administrator of the estate of his two minor children against Louisiana and Arkansas Railway Company and T. A. Butcher. Defendants denied any negligence on their part and alternatively pleaded contributory negligence as a bar to plaintiff’s recovery. They also third partied plaintiff’s insurer, Travelers Indemnity Company, for property damages to railroad signal standards. The district court with written reasons rendered judgment in favor of defendants dismissing all of plaintiff’s demands. It further ordered plaintiff and his insurer to pay Louisiana and Arkansas Railway Company the sum of $506.50 for the damages to the signal standards.
Plaintiff, individually and on behalf of his minor children, has herein perfected this devolutive appeal primarily contending the trial court erred in failing to find negligence on the part of the engineer and/or the crew members of the train and failing to find that the engineer and/or the crew members had the last clear chance to avoid the accident. Travelers did not join in the appeal. We affirm.
The able trial judge after listening to all of the testimony made extensive findings of fact. He concluded that the signal flashers and bells at the crossing were operating at the time when plaintiff was stopped or slowing before he entered the crossing; that there was no evidence to rebut Butcher’s testimony that he applied the train’s emergency brakes 200-300 feet before the crossing when plaintiff’s danger was made known to him; that plaintiff’s vehicle stopped on the tracks when the engine was about 315 feet from the crossing; that Akens, the flagman, shouted to Butcher that the train had not cleared the crossing when the engine was -280 feet from the intersection; and that plaintiff could have seen an approaching train at some 500-600 feet from the crossing had he looked. He declared the plaintiff negligent in entering the crossing at a time when the flashers and bells warned of an approaching train and held that defendant Butcher was not negligent in his operation of the train nor did he have the last clear chance to avoid the collision. We believe that for the most part these findings are fully supported by the record.
Plaintiff’s main argument is based upon the premise that his vehicle stalled on the tracks at a time when the train was at least 2600 feet from the intersection[1] and *385 that the train crew was negligent in failing to stop ’ when they clearly had sufficient time to perceive the disabled vehicle. We believe the record lends no support whatsoever to this theory;
The record discloses plaintiff recalled virtually nothing about the accident. Among other things he specifically did not recall: how fast he was going as he approached the crossing; whether he stopped before he proceeded to cross; if he looked at the signal standards to see if they were flashing; how far away the train was when he first saw it and how much time passed before impact; how long he was stalled; the speed of the train; if he considered attempting to get his sons out of the back of the car; the impact itself and talking to the police officer afterwards. Cooper also admitted he did not look to see if a train was coming as he approached the crossing and did not even look after his car stalled.
Obviously, plaintiff’s own testimony does not support his theory. Furthermore, no testimony of any other witness even approached establishing that the accident occurred in the manner advanced by plaintiff. All other eye witnesses to the accident were members of the train’s crew. Their testimonies were in all practical respects consistent. They testified the train was traveling about 25 mph and that the Cooper vehicle was first spotted from a 600 foot distance as it slowly approached the crossing and stopped beside the railroad tracks. Since the whistle, bell and flasher lights were operating and it was a clear day, the crew assumed the car would remain stopped. However, the car began to move slowly across the tracks. At that time though there was still a considerable distance between the train and the car, and accordingly, the engineer did not slow down. As the car crossed the intersection it passed out of the engineer’s sight around the nose of the engine and he assumed it had safely cleared the intersection. Crewmen Akens and Difulco were seated on the other side of the engine cab and were able to see the vehicle stop before clearing the tracks and shouted a warning to the engineer. The engineer immediately applied the emergency brakes, but by this time the train was too close to the crossing to be able to stop. Impact occurred and the train traveled approximately 210 feet before the emergency brakes finally brought it to a halt.
An examination of the record does not reveal that the trial judge erred in concluding that the accident occurred in the manner described by the crew members. The only inconsistency in defendant’s case is the testimony of their two stopping distance experts. One expert estimated the train could stop in 527 feet and the other, using the train’s speed tape,[2] calculated a stopping distance of 853 feet. We believe that regardless of which of these estimations is deemed correct, the evidence still preponderates in favor of the conclusion that the brakes were applied as soon as it became apparent the Cooper vehicle would not clear the tracks. By that time the accident was unavoidable.
We conclude that defendants were in no way negligent and at all times acted properly and in conformity with their legal duties. See Wheat v. New Orleans and Northeastern Railroad Co., 245 La. 1099, 163 So.2d 65 (1964). Accordingly,' the doctrine of the last clear chance is inapplicable to the facts of this case.
The judgment of the trial court is affirmed. Plaintiff is to pay costs.

Affirmed.

. Unrefuted evidence established that the tripping mechanism for the crossing signals was located 2600 feet from the crossing and that it was functioning properly. Since plaintiff did not recall whether the signals were functioning when he drove onto the tracks, counsel is suggesting that the tripping mechanism had not as yet been activated.

. A speed tape is a sealed mechanical device which continuously graphically records speeds and points at which the brakes of the train are applied.