WILLIAMS, Judge.
This is an appeal from a judgment in favor of plaintiffs for injuries he suffered in a collision between an automobile and a railroad vehicle called a tamping machine. Plaintiff, Harold Ferrer, was the driver of *688 the automobile, and defendants are the New Orleans Public Belt Railroad [“NOPBR”], and its driver, John Gilbert. Plaintiffs insurance company, Audubon Insurance, also sued NOPBR for amounts it advanced plaintiff for property damage to his automobile. Plaintiff’s and Audubon’s petitions for damages were consolidated for trial. The trial court entered a judgment for plaintiff in the amount of $8,500.00 for personal injuries, pain and suffering, $624.00 for plaintiff’s special medical damages, and $687.00 for property damages to plaintiff’s automobile.[1]
Plaintiff essentially alleged NOPBR failed to maintain proper warning lights at the intersection and that the lights were defective at the time of the accident. The trial court found that the railroad warning light signals were not operating properly at the time of the accident; that the warning signals were dangerously defective on the date of the accident; that defendant driver was also negligent in causing the accident; and that plaintiff was not contributorily negligent. From this judgment, defendant suspensively appealed alleging no liability.
The facts of this case as determined by the trial court are simple. The accident occurred at the intersection of France and Chartres Streets in New Orleans. Plaintiff was driving his automobile southbound toward the Mississippi River on France Street, preparing to make a right turn onto Chartres Street when he was struck by defendant’s tamping machine. The record indicates that the railroad tracks enter the intersection between France and Chartres Streets on a curve in a northeasterly direction, and it appears that plaintiff had reached the intersection first and had stopped and looked to his left and then to his right. Since plaintiff could not see clearly in both directions, he then inched forward to see if there were any vehicles approaching from either direction. The railroad crossing warning lights and bell were not operating at the time plaintiff approached' and entered the intersection. After plaintiff inched forward, he stopped again, looked to his left and before he could look to his right, his automobile was struck at the front left corner by defendant’s tamping machine. The tamping machine was unable to stop in time to avoid hitting plaintiff’s automobile. The tamping machine was not equipped with its own lights, horn, whistle or bell with which to signal its approach.
Plaintiff injured his lower back and received other bumps and bruises elsewhere on his body. He was in significant pain for approximately four to eight months after the date of the accident. His medical care involved approximately six visits to the doctor, in addition to several physical therapy treatments over a period of four months. The defendant driver was not injured as a result of this collision.
There were three eye-witnesses to the accident other than the parties themselves. Plaintiff’s two eye-witnesses were located in the block of the accident and stated unequivocally that plaintiff was stopped and that the warning lights were not operating at the time of the accident. Plaintiff’s witnesses testified that they never saw defendant’s eye-witnesses, nor another witness identified as a railroad employee repairman. The defendant’s eye-witness was a female security guard who occupied a guardhouse in the train yard near the scene of the accident. She testified that she was about 30 feet away from the accident when it occurred. She did not, however, come forward at the time of the accident to give her version of the accident for the police investigation which was conducted immediately afterwards. Defendant’s other witness was an “expert” for defendant who was merely a track warning light repairman. He was not, however, offered nor qualified as an expert witness. He testified that he was not at the scene of the accident at the time it occurred, nor after, and only stated his opinion of what would have hap *689 pened when the warning lights were operating, what triggered them, and what would happen if they malfunctioned. He testified that the warning system was a “failsafe” system and was designed to operate even though the lights might lose their regular power source, continuing to function on battery power. The tamping machine driver’s testimony was exactly opposite that of the plaintiff, and although the female railroad security guard also testified and corroborated the railroad driver’s testimony, this version was apparently given little weight by the trial court.
This case presents an example of a determination made on the basis of the credibility of the witnesses. The trial court made a credibility determination based upon the testimony of all witnesses presented at trial. When there is testimony in the court below, reasonable evaluations of credibility and inferences of fact should not be disturbed upon review even though the appellate court may feel its own evaluations and inferences are as reasonable. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973); Abadie v. Morales, 391 So.2d 974 (La.App. 4th Cir.1980).
Based on the facts as determined by the trial court, the trial court applied the law correctly. The cases cited by defendant that place a duty on a motorist to stop at a railroad crossing are easily distinguishable from this case. Most involved train/automobile collisions occurring when either warning lights and bells were present and operating or, when railroad crossing stop signs were present in addition to the headlights, whistles and horns on the train itself. In all cases, the headlight on the train was burning and the whistles, horns and bells were clearly sounded in advance to warn motorists of the approaching train. See, e.g. Wheat v. New Orleans and Northeastern Railroad Company, 245 La. 1099, 163 So.2d 65 (1964); Hymel v. Texas and New Orleans Railroad Company, 145 So.2d 138 (La.App. 4th Cir.1962). In the case now before us, the plaintiff stopped before he entered the intersection although the railroad crossing warning lights were not operating. It was not manifestly erroneous, therefore, for the trial court to find that plaintiff had discharged his duty to stop and look. We also find defendant Gilbert, as the driver of the tamping machine, negligent. He was aware that the tracks crossed the intersection at an angle, thus exposing plaintiff to danger. The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. Because Gilbert failed to perform that duty, his negligence was the proximate cause of the injury. See Russo v. Texas and Pacific Railway Company, 189 La. 1042, 181 So. 485 (La.1938).
The trial court found ample evidence of defendant’s negligence and, therefore, did not err in its determination that plaintiff was entitled to recover. We cannot conclude that the judgment of the trial court was manifestly erroneous.
We do not have to resolve the amount of damages recoverable by plaintiff’s insurance company since the parties agreed, during oral argument, that defendant would be liable to Audubon for the $587.00 for their out-of-pocket expenses.
For the reasons cited above, the judgment of the trial court is affirmed.
AFFIRMED.

. Plaintiffs insurance company, Audubon Insurance, was subrogated to plaintiffs claim for damages to his automobile since the company had already paid to fix plaintiff’s car less the first $100.00 which was plaintiffs deductible.