440 So.2d 805 (1983)
Frances Peco KETCHER, et al.
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY, et al.
No. 83 CA 0022.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
Rehearing Denied November 22, 1983.
Writs Denied January 27, 1984.
*807 Stephen C. Sledge, Hammond, for plaintiff-appellant Frances Peco Ketcher.
Wilfred H. Boudreaux, New Orleans, for plaintiffs-appellants Angelina Michel, Victor Michel, Jr., Bernadette Michel Courcelle and David Michel.
H. Martin Hunley, Jr., David Kelly, New Orleans, for defendants-appellees Illinois Central Gulf R.R., Nat. R.R. Passenger Corp. a/k/a Amtrak, and J.E. Newman.
Charles G. Walker, Hammond, for defendant-appellee Tangipahoa Parish Port Com'n.
Iddo Pittman, Jr., Hammond, for third party defendant-appellee B.F. Diamond Const. Co.
Charles M. Hughes, Bogalusa, for intervenor-appellant Aetna Cas. & Sur. Co.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a suit for damages in tort arising from a train-truck collision. The suit was instituted by the surviving wife[1] of Bobby Junior Ketcher, the driver of the truck, and the surviving wife and three major children[2] of Victor J. Michel, Sr., a guest passenger in the truck. Made defendants were the Illinois Central Gulf Railroad Company (ICG), National Railroad Passenger Corporation (Amtrak), J.E. Newman (the engineer on the train) and the South Tangipahoa Parish Port Commission (Port). Aetna Casualty & Surety Company (Aetna) intervened for indemnification as the workmen's compensation insurer of B. & F. Diamond Construction Company, Inc. (B. & F.), the employer of Ketcher and Michel. This matter proceeded as a jury trial for ICG, Amtrak and J.E. Newman, and as a judge trial for the Port.[3] The jury (by a vote of 10-2) found that ICG, Amtrak and Newman were not negligent. The trial judge determined that the Port was not negligent and rendered judgment against the plaintiffs in accordance with his and the jury's findings. These devolutive appeals followed.[4]

FACTS
The Port operates facilities on the north side of North Pass Manchac in Tangipahoa Parish, Louisiana. Immediately to the west of this port property, ICG maintains a main line and a spur line each running in a north south direction. Immediately to the west of the ICG railroad tracks are the old U.S. Highway 51 roadbed and an 1-55 highway service road which also run in a north south direction.
*808 In 1967, to secure access from their North Pass Manchac property to the nearby highways, the Port executed a license agreement with ICG for a private grade crossing over the ICG tracks. Part of this agreement required the Port to indemnify and hold ICG harmless from all liability connected with the crossing. This crossing became known as the North Pass Crossing and the roadway was known as the Port Commission road.
Prior to January 13, 1977, B. & F. leased a portion of the Port property for use in construction projects in which it was involved. This leased site was on the Port Commission road several hundred feet east of the North Pass Crossing.
On January 13, 1977, Bobby Junior Ketcher and Victor J. Michel, Sr. were employees of B. & F. working on or near the property leased by B. & F. from the Port. At approximately 3:00 P.M., Ketcher and Michel stopped their work and left the B. & F. construction site in a 1973 GMC pickup truck owned and operated by Ketcher. Ketcher drove this vehicle in a westerly direction on the Port Commission road. At this same time and place, J.E. Newman was operating Amtrak Train No. 59, Engine 627, in a southerly direction on the ICG main line. William M. Hale was the fireman on the train and Elmer D. Newman was the conductor. There was a collision between the Amtrak train and the Ketcher truck at the North Pass Crossing. Michel was killed almost instantly. Ketcher died eighteen days later.

NEGLIGENCE OF ICG, AMTRAK, J.E. NEWMAN AND THE PORT
The Michel heirs and Aetna contend that the factual findings of no negligence by the jury and the trial judge are in error and should be reversed but do not specify in what manner these findings are factually incorrect. Mrs. Ketcher did not assign as error the jury verdicts or the trial judge's ruling. Since these issues were not raised by Mrs. Ketcher in a specification of error in her brief, this court will consider those issues abandoned by her and will not review them in this appeal. Oh v. Allstate Insurance Company, 428 So.2d 1078 (La.App. 1st Cir.1983); Harrison v. South Central Bell Telephone Company, 390 So.2d 219 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 900 (La.1981); Rule 1-3, Uniform Rules, Courts of Appeal.
J.E. Newman, the engineer on the Amtrak train, testified that he was proceeding in a southerly direction on the ICG main line at a speed of 79 miles per hour in accordance with ICG's operating rules. There was visibility of one and one-half to two miles. When the train was 2000 feet from the North Pass Crossing, Newman commenced ringing the train's bell and giving a crossing signal on its whistle (two long blasts, a short blast and then a long blast). The train also had a fixed headlight which was turned on and an oscillating headlight which was turned on. When the train was approximately 400 feet from the crossing, Newman observed Ketcher's truck about 20 to 25 feet from the crossing approaching from Newman's left at a slow rate of speed. Upon seeing the truck, Newman gave a stock alarma series of short blasts of the train's whistle to attract the attention of the truck's driver. Newman testified that as slow as the truck was going it could have stopped at anytime before reaching the track, and he assumed that it would do so. When the train was approximately 100 to 140 feet from the intersection, Newman observed the truck proceed onto the tracks and stall on the main line. He immediately went into emergency status and applied the emergency brakes. The train collided with the truck and came to rest about one-half mile from the point of collision. The testimony of the train's fireman, William M. Hale, corroborated the testimony of Newman.
The plaintiffs called as witnesses Michael Hebert and Raymond Bates who testified that they were working at the B. & F. construction site several hundred feet east of the point of collision and, although they heard the roar of the train, neither could recall hearing a bell, whistle or horn of the train prior to collision. Elmer Newman, the *809 train's conductor, testified that he did not hear the train's horn. His testimony is of little significance since he was in the sixth car at the time of collision and admitted that he could not have heard the horn even if it had been blown. This testimony was offered by the plaintiffs to show that Newman was in violation of La.R.S. 45:561[5] by failing to sound a bell, whistle or horn for a distance of not less than 300 yards before the crossing was reached.
A special interrogatory was not submitted to the jury to resolve the conflict between the Newman-Hale and Hebert-Bates testimonies. Since the jury rendered a general verdict finding no negligence, it is presumed that it resolved this factual dispute in favor of the defendants. Steinbach v. Barfield, 428 So.2d 915 (La.App. 1st Cir. 1983), writ denied, 435 So.2d 431 (La.1983); Tauzin v. Claitor, 417 So.2d 1304 (La.App. 1st Cir.1982), writ denied, 422 So.2d 423 (La.1982).
There is no evidence of record to show that the train's speed of 79 miles per hour was in violation of any federal, state or local law, ordinance or regulation. Instead, the evidence indicates that the train's speed was in accordance with ICG regulations.
Dr. Olin K. Dart, Jr., an expert in traffic engineering and safety, testified that the North Pass Crossing was not an unreasonably dangerous crossing. He based his opinion on the facts that the Port Commission road was a low volume of traffic road, there was visibility exceeding one mile in either direction up and down the track from the crossing and the crossing was not a highway speed crossing but was a shelled private access road.
The operator of a railroad train may presume that a vehicle approaching the track at a crossing will stop in time to avoid an accident. The train crew is not required to attempt to stop or even to prepare to stop unless there is reason to believe the motorist is unaware of the oncoming train or does not intend to stop. Likewise, the operator of a train may assume that a motorist who starts across the track at a crossing will proceed across the track and will not stop on the track. Wheat v. New Orleans and Northeastern Railroad Company, 245 La. 1099, 163 So.2d 65 (1964); Fisher v. Walters, 415 So.2d 343 (La.App. 2nd Cir.1982), rev'd on other grounds 428 So.2d 431 (La.1983); Kaplan v. Missouri-Pacific Railroad Company, 409 So.2d 298 (La.App. 3rd Cir.1981). Under the law, the train's engineer had the right to assume that Ketcher would either stop his vehicle before crossing the tracks or would continue across the tracks until he reached a point of safety. When Ketcher's vehicle stalled on the main line, the engineer immediately commenced emergency procedures but to no avail. The testimony of Professor Robert MacRae, an expert in the performance of braking systems, indicates that even if the train had been going at a substantially slower speed emergency braking would not have avoided the collision.
Considering all of these facts and circumstances, we cannot say that the rulings of the jury and trial court were clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

JURY INSTRUCTION ON NEGLIGENCE PER SE
All of the appellants contend that the trial court committed error by not instructing the jury that the failure to sound a bell, whistle or horn by a train as required by La.R.S. 45:561 is negligence per se. As authority for this proposition, the appellants cite Bertrand v. Missouri Pacific Railroad Company, 160 So.2d 19 (La.App. 3rd Cir.1964), writ refused, 245 La. 1075, 162 So.2d 571 (1964) and Watson v. Illinois Central Gulf Railroad, 355 So.2d 1366 (La.App. 1st Cir.1978), writ denied, 357 So.2d 1168 (La.1978).
The Louisiana Supreme Court and this court have rejected the concept that violation of a statute is negligence per se which renders a defendant liable to a plaintiff. Boyer v. Johnson, 360 So.2d 1164 (La. *810 1978); Weber v. Phoenix Assurance Company of New York, 273 So.2d 30 (La.1978); Knockum v. Amoco Oil Company, 402 So.2d 90 (La.App. 1st Cir.1981), writ denied, 409 So.2d 616 (La.1981); Broyles v. Yarbrough, 374 So.2d 705 (La.App. 1st Cir.1979), writ denied, 380 So.2d 71 (La.1980). See also Lee v. Louisiana Transit Company, Inc., 414 So.2d 838 (La.App. 4th Cir.1982) and Martinez v. Modenbach, 396 So.2d 471 (La.App. 4th Cir.1981), writ denied, 399 So.2d 620 (La.1981). Rather, when the duty upon which a plaintiff relies is based upon a statute, the court must inquire into whether or not the risk which caused the plaintiff's injuries was included within the ambit of protection of the statutory duty. Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982). There are instances where the violation of a statutory duty is not negligence. Laird v. Travelers Insurance Company, 263 La. 199, 267 So.2d 714 (1972).
The ruling of the trial court rejecting the proposed instruction on negligence per se was correct.

EVIDENCE ON ABSENCE OF OTHER ACCIDENTS
Mrs. Ketcher contends that the trial court committed error when it allowed T.M. Martin, a claims agent for ICG, to testify that he did not know of any other accidents occurring at the North Pass Crossing. The Michel heirs and Aetna did not complain about this ruling in an assignment of error in their briefs and it is considered abandoned insofar as they are concerned.
In their petition, the plaintiffs contended that the defendants were negligent, in part, because the North Pass Crossing was dangerous since adequate warning devices were not installed (the crossing only had a "cross-buck" warning sign), underbrush had not been cleared in the vicinity of the crossing and a flagman was not stationed at the crossing. The plaintiffs introduced evidence attempting to prove these allegations. In rebuttal to this evidence, the defendants offered the contested evidence of absence of prior accidents. The plaintiffs contend that this evidence is not relevant. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. State v. Ludwig, 423 So.2d 1073 (La.1982). Whether evidence is relevant is within the discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of this discretion. State v. Chaney, 423 So.2d 1092 (La.1982).
It appears well-settled that evidence of prior accidents is admissible for the limited purpose of showing the dangerous nature of the thing or place which caused injury and the knowledge of the defendant of the dangerous condition. See, for example, Wilson v. Aetna Casualty and Surety Company, 401 So.2d 500 (La.App. 2nd Cir.1981); Keen v. Pel State Oil Company, Incorporated, 395 So.2d 866 (La.App. 2nd Cir.1981), writ denied, 401 So.2d 355 (La.1981); Miller v. Employers Mutual Liability Insurance Company of Wisconsin, 349 So.2d 1353 (La.App. 2nd Cir.1977), writ denied, 352 So.2d 235 (La.1977); Shively v. Pickens, 346 So.2d 1314 (La.App. 3rd Cir. 1977). In Cassanova v. Paramount-Richards Theatres, 204 La. 813, 16 So.2d 444 (1943), the plaintiff sustained injury when her foot went into a space between the end of a row and the edge of a step in a theatre while descending the aisle-stairway causing her to fall. In the trial court, the manager of the theatre was allowed to testify that during the fifteen years since its construction no complaint had ever been made of a similar accident. On original hearing, the Louisiana Supreme Court held that the absence of other accidents at the place of an alleged defect is not admissible because such evidence raises collateral issues and has no reasonable tendency to prove that such place of injury was free from danger. However, in a per curiam opinion refusing a rehearing, the court considered the evidence of absence of prior accidents and nevertheless concluded that the operator of the theatre by exercising ordinary care and foresight *811 could have and should have anticipated that a patron would step into the opening and fall. In several court of appeal opinions, where evidence of absence of other accidents was admitted in the trial court without objection, such evidence was considered relevant for the limited purposes of determining the condition of the thing or premises and the lack of knowledge of the defendant. However, these opinions also indicate that such evidence is not conclusive. Jones v. Recreation and Park Commission of Parish of East Baton Rouge, 395 So.2d 846 (La.App. 1st Cir.1981); Benedetto v. Travelers Insurance Company, 172 So.2d 354 (La.App. 4th Cir.1965), application denied, 247 La. 872, 175 So.2d 108 (1965); Magoni v. Wells, 154 So.2d 524 (La.App. 4th Cir.1963), writ refused, 245 La. 58, 156 So.2d 602 (1963); Scott v. Fair Grounds Corporation, 112 So.2d 763 (La.App.Orl.1959); McQuillan v. City of New Orleans, 18 So.2d 218 (La.App.Orl.1944); Sistrunk v. Audubon Park Natatorium, 164 So. 667 (La.App.Orl. 1935). The weight of authority in the United States is that evidence of the absence of other accidents at the same place is relevant and admissible as tending to show that the place was not dangerous and that the defendant did not have actual or constructive knowledge of a dangerous condition. 29 Am.Jur.2d Evidence, § 310 et seq. (1964); Annot., 31 A.L.R.2d 190 (1953); 1 S. Garde, Jones on Evidence, § 4:22 (6th ed. 1972); E. Cleary, McCormick's Handbook of the Law of Evidence, § 200, pp. 476-478 (2nd ed. 1972). Thus, in Wollaston v. Burlington Northern, Inc., 612 P.2d 1277 (Mont.1980), a suit arising out of a train-automobile collision and factually similar to the instant case, evidence of whether there had been prior accidents at a railroad crossing was determined to be relevant on the issue of whether additional protection for the crossing was needed.
We cannot say that the trial judge abused his discretion by allowing the defendants to introduce evidence of absence of other accidents at the North Pass Crossing under the facts and circumstances of this case. This specification of error is without merit.

MOOT ISSUES
The Michel heirs and Aetna contend that the trial court committed error by submitting the question of Victor Michel, Sr.'s contributory negligence to the jury in an interrogatory, by not granting a directed verdict in favor of Michel on this point and by submitting an instruction to the jury on the doctrine of last clear chance as it pertained to Michel. Because the jury determined that the defendants were not negligent, it did not act upon the question of the contributory negligence of Michel or the application of last clear chance to his situation. Since we have determined that the jury's verdict was correct, these alleged errors are no longer pertinent to these proceedings and are moot.
Even if the trial court committed the errors herein alleged, a remand for a new trial would not be granted. Even though a trial court has committed error, where the trial court record is complete, an appellate court should render judgment on the record if it can without a remand. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Usually, a remand will be granted only where a view of the witnesses is essential to a fair resolution of conflicting evidence. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980).

CONCLUSION
For the foregoing reasons, the judgment of the trial court is correct and is affirmed. The appellants are cast for all costs of this appeal.
AFFIRMED.
NOTES
[1] Frances Peco Ketcher.
[2] Angelina Michel, Victor Michel, Jr., Bernadette Michel Courcelle and David Michel.
[3] The Port is a public agency. La.R.S. 34:1951 et seq.; La.R.S. 13:5105. By stipulation between the parties and judgment of the court, the third party demands of ICG and Amtrak against the Port and the third party demand by the Port against B. & F. and its insurer were deferred for later disposition by the court.
[4] Mrs. Ketcher, the Michel heirs and Aetna each separately appealed. Aetna adopted the assignments of error asserted by the Michel heirs. There is only one common assignment of error between Mrs. Ketcher and the Michel heirs.
[5] This statute was repealed by Act 669 of 1982 and reenacted as La.R.S. 32:168.