GARRISON, Judge.
In this action to collect two promissory notes, defendant makers and guarantors appeal from a judgment in favor of the plaintiff bank on its main demand and from a judgment n.o.v. setting aside the jury’s award of damages in reconvention.
Whitney National Bank of New Orleans (hereinafter referred to as Whitney) filed suit against Thomas E. Smith, Jr., the defendant maker of a personal note in the principal sum of $144,500.00, and against GNO Holding Corporation (GNO), Smith’s company, the defendant maker of a second note in the principal sum of $318,000.00. The suit further named Smith, his wife Lita, and another Smith company, Equity Consultants of New Orleans, Ltd., as defendant guarantors of the second note and liable in solido with GNO.
In answer to Whitney’s petition, defendants alleged that the bank had fraudulently induced them to sign the notes, and guarantees by promising to lend defendants or their corporations an additional $500,000.00 and to forbear collecting interest on the $318,000.00 note. In a supplemental recon-ventional demand, defendants claimed that *789 Whitney had breached both of these promises and had also wrongfully refused to return guarantees by Smith and his father on an unrelated note by Smith’s former business, Key Travel Enterprises, Ltd. Defendants assert that Whitney’s failure to honor its promises had caused Smith to abandon his plans for a new business venture and thereby suffer damages in the form of lost profits and revenues. Defendants prayed for a jury trial on both the main and reconventional demands.
On Whitney’s motion, the trial judge struck defendants’ request for a trial by jury on the main demand, but granted a jury trial on the reconventional demand. After a panel of this court denied defendants’ application for writs from that trial judge’s order, the matter proceeded to a bifurcated trial.
Following a three day trial, judgment was rendered in favor of Whitney on the original demand for the balances due on both notes, plus interest and attorneys fees. In response to interrogatories on the reconventional demand, the jury concluded that the Whitney had not agreed to return the guarantees of Mr. & Mrs. Smith in connection with the unrelated debt of Key Travel Enterprises, Ltd. nor to make an additional loan commitment for $800,000.00 to GNO. The jury did conclude, however, that Whitney had breached an agreement with Smith and GNO to extend or forebear payment of the notes, and that GNO had suffered resulting damages in the amount of $750,000.00.
Alternative motions for a judgment notwithstanding the verdict or a new trial were filed. The trial judge denied defendants’ motions for a new trial, but granted Whitney’s motion for judgment n.o.v. reversing and setting aside the jury’s $750,-000.00 award. In oral reasons, the trial judge concluded the jury was clearly wrong in finding that Whitney had agreed to extend the notes or forebear collection.
Appealing, defendants contend the trial judge erred by: 1) refusing a jury trial to defendants on the main demand; 2) granting judgment N.O.V. in favor of Whitney where there was sufficient evidence for reasonable persons to find that plaintiff had breached its forebearance agreement; 3) refusing to allow proof of damages concerning Smith’s loss of franchising rights in a retail computer company; and 4) refusing to submit jury interrogatories on the issue of fraud. We find no merit to these contentions.
JURY TRIAL
The basis for Whitney’s motion to strike the defendants’ demand for a jury trial is LSA-C.C.P. Art. 1732(2), which provides that a jury trial shall not be available in a suit on an unconditional obligation to pay a specific sum of money, unless the defense thereto is forgery, fraud, error, want or failure of consideration. Defendants contend, however, that they are entitled to a jury trial on all issues because there were well pleaded allegations of fraud in their original and supplemental answers and because the alleged obligations of the Smiths’ and Equity Consultants Ltd. are not unconditional promises to pay. We disagree.
Defendants’ arguments concerning the defense of fraud have already been raised in this court in their prior writ application from the trial court’s judgment striking the request for a jury trial on plaintiff’s main demand. In denying defendants’ application, the writ panel of this court stated: “We find no error in the ruling of the trial court.” The arguments raised in defendants’ appellate brief on the issue of fraud are essentially the same arguments earlier raised in the application for writ of review. Under these circumstances, we find no necessity to address further this aspect of defendants’ argument.
We likewise reject the contention that Whitney’s suit on the continuing guarantees entitle defendants to a jury trial. Because the guarantees bind the guarantors with the legal maker of the note, Whitney’s action against all defendants in soli-do remains a suit on an unconditional obligation to pay a specific sum of money, an *790 action for which a jury trial is not available.
JUDGMENT N.O.V.
We further find no error in the trial judge’s denial of defendants’ motion for a judgment n.o.v. and the granting of plaintiff’s motion.
In ruling on a motion for judgment notwithstanding the verdict, pursuant to LSA-C.C.P. Art. 1811, the trial judge must consider all the evidence and reasonable inferences in a light most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, the motion should be granted and a judgment rendered notwithstanding the jury’s findings. On the other hand, if there is substantial evidence of such quantity and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions, the motion for judgment n.o.v. should be denied. The court should not weigh the evidence, pass on the credibility of the witnesses, or substitute its factual judgment for the jury’s, however. Blum v. New Orleans Public Service, Inc., 469 So.2d 1117 (La.App. 4th Cir.1985); Rogeau v. Commercial Union Ins. Co., 432 So.2d 1162 (La.App. 3rd Cir.1983), writ denied 437 So.2d 1149 (La.1983).
Applying this legal standard to the record in the instant case, we find no error in the trial court’s rulings on the motions for judgment n.o.v.

Key Travel Guarantees

Defendants’ motion for judgment n.o.v. takes issue with the jury’s verdict that Smith failed to prove by preponderance of the evidence that he and Whitney had mutually agreed to the return of the guarantees in the amount of $150,000.00 each given by Thomas E. Smith, Jr. and Lita Smith as security for the debt of their former business, Key Travel Enterprises, Ltd.
In 1975, the Smiths’ purchased the travel agency and borrowed money from Whitney. In connection with these business loans, Smith, his wife and his father signed continuing guarantees of Key’s indebtedness.
In 1979, Smith sold the travel agency to a third party, Arlen J. Krieger. According to Smith, Whitney had consented to the sale of the business and knew that the new purchaser, Krieger, was to replace the Smiths’ continuing guarantees as a condition of the sale. On the basis of this evidence, Smith contends the Whitney had an obligation to return the guarantees but has failed to do so. Defendants rely on the following clause in the option to purchase the business, a copy of which was sent to Whitney:
“5. There are foreseen, to effect this transaction and transfer of authority, the following steps, among others which may come to be done, the order of which is only approximate:
c. Replacement, by Buyers, of the Sellers’ continuing guarantees that Whitney National Bank, guaranting Key Travel’s working capital notes; also, of the continuing guarantee of Thomas E. Smith, Sr.”
On the other hand, both Krieger and Paul Hogan, the Whitney loan officer involved, testified that the bank made no such promise to return the guarantees.
The evidence considered, we hold that the jury could have reasonably concluded that there was no mutual agreement between Smith and the Whitney for the return of the guarantees of Key Travel’s debt. Whitney did not sign the act of sale of the travel agency. The language in the option to purchase does not obligate Whitney to return the guarantees; it merely foresees or contemplates that the buyers of the travel agency will replace them. This obligation to furnish new guarantees, if any, is owed by the buyer to the seller. As a matter of contract interpretation, the Whitney’s mere receipt of a copy of this option purchase in no way binds the Whitney to return the guarantees.
*791 Accordingly, we find no error in the trial judge’s denial of defendant’s motion for judgment N.O.V. concerning this aspect of the case.

Two-step Loan

We further find no error in the trial judge’s refusal to disturb the jury’s verdict that GNO failed to prove the existence of a commitment by Whitney to loan GNO an additional $800,000.00.
In their reconventional demand, defendants claimed that the Whitney “fraudulently” induced GNO to sign the $318,000.00 loan and obtained the Smiths’ guarantees of the debt by assuring them that an additional $500,000.00 loan would be made to fund Smith’s plan to organize a “small business investment corporation” to provide venture capital to emerging companies. Smith contended that the Whitney’s failure to complete the $800,000.00 loan package caused him to abandon his plans for the new business and suffer damages in the form of lost profits.
Smith’s proposed business venture involved the lending of money to small businesses in exchange for stock ownership. To organize this business, Smith needed $500,000.00 in initial capital to apply for a license from the federal Small Business Administration and to qualify for additional state and federal funds. Smith hoped to “leverage” his initial investment to lend millions of dollars and pay off his loans at Whitney. To obtain his initial financing Smith applied for loans from two banks, Whitney and First National Bank of Jefferson, and also sought financial backing from Howard, Weil, a New Orleans investment banking firm.
In support of this aspect of the case, Smith introduced his letter of February 16, 1981 to Whitney requesting specifically an $800,000.00 loan to be made in two parts: one for $300,000.00 and the second for $500,000.00 approximately 120 days later. Although Smith testified that Whitney did not accept this proposal, he did not consider it as “rejected” either and continued working on the proposal. In a March 17, 1981 letter to Whitney he proposed two separate, independent loans of $300,000.00 and $500,000.00. On May 11,1981, however, he renewed his request for a “two-step” loan made in his February 16th letter, but proposed that the loan be paid from the proceeds of “an equity injection into GNO now being prepared by Howard Weil”. According to Smith, Whitney eventually agreed to make $800,000.00 two-step loan, of which the $318,000.00 note of August 10, 1981 was the first disbursement.
On the other hand, Paul Hogan, Whitney’s loan officer testified that he made no such agreement. According to Hogan the $318,000.00 note was merely a “transfer” or “refinancing” of an existing $318,000.00 debt owed Whitney by another of Smith’s companies, Equity Consultants of New Orleans. Hogan’s testimony was corroborated by Mark Tessier, a vice president of Howard, Weil, who was assisting Smith in his attempt to raise $800,000.00 in capital. According to Tessier, Hogan did not agree to make the $800,000.00 loan at a luncheon meeting in May, 1981, and Smith never informed him otherwise. Indeed, as late as December, 1982 both Smith and Tessier were pursuing efforts to obtain an $800,-000.00 loan from another bank, the First National Bank of Jefferson Furthermore, in answer to a question whether anyone from the Whitney had ever told him orally that the bank would make the $500,000.00 loan, Smith answered: “All they did was make the first disbursement and that, in my mind, committed them to the entire $800,000.00 consideration_” Such evidence falls short of the consent necessary for a binding contract.
The evidence considered, we conclude the jury reasonably concluded that defendants had failed to prove the existence of a loan commitment for $800,000.00.

Forbearance On Interest

We conclude, however, that the trial judge properly granted Whitney’s motion for a judgment n.o.v. overturning the jury’s award of $750,000.00 in damages to defendants based on the jury’s finding that the Whitney had breached an agreement to *792 extend or forbear interest charges on the promissory notes.
In order to raise collateral for his loans with the Whitney, Smith sold his stock warrants and franchise rights in Summa Management Corporation, which owned a chain of retail computer stores. In payment of Smith’s interest the purchaser, Management Designs Corporation, issued the eighteen promissory notes that were ultimately pledged to Whitney to secure Smith’s personal indebtedness.
According to Smith, in exchange for this $114,000.00 in collateral for his personal loan, Whitney agreed to carry the $144,-500.00 note at fixed interest of 10% instead of a higher variable note and to hold GNO’s $318,000.00 note “on a nonaccrual basis for one year”, i.e. to withhold charging interest or collecting the note while Smith reduced his personal note and organized his planned business venture, the small business investment corporation.
In connection with this testimony, Smith introduced copy of his August 26, 1982 letter to Paul Hogan of the Whitney Bank, which read as follows:
“As explained to you, I have reached an agreement for sale of the 35% warrant in Summa Management Corporation, now owned by Equities Bank Limited. The agreement is contingent on your approval, and delivery of a letter in the general terms of the attached draft.
“For sale of the warrant, Equities Bank Limited will receive $114,000.00 in 18 monthly notes of approximately $6,300 including interest. The notes will be from a corporation named Management Designs, Inc., and will have guarantees from Summa Management, Robert L. Whitmyer, and William S. Lucky.
“With the concurrence of the makers and guarantors of these notes, I am now able to propose the following:
“1. I presently owe, personally, about $160,000 principal and interest. I propose to pay this over 30 months, fixed interest of 10%, or 30 payments of $6,049.83. The first 18 payments will be guaranteed by an assignment or pledge of the 18 notes resulting from sale of the warrant.
“2. GNO Holding Corp. is without funds to service its $318,000 note. I am without funds or cash flow to service it. I propose that this note be held on a non-accrual basis for one year from September 1, while note “1” above is being reduced on schedule, with the understanding that I am using my best efforts to realize proceeds from other operations of which you are aware, to make substantial payments on this note during the interim....
“Closing of the Warrant sale is tentatively scheduled for Wednesday morning, September 1. I would appreciate your response in time to firm up this transaction. The other parties are agreeable that you shall hold the notes I receive in payment for the warrant.”
Smith also cited a September 11, 1982 letter to Whitney from Management Designs, which stated: “We have agreed that you will hold these notes as collateral for other obligations, under the terms of the letter addressed to you on August 26, 1982 by Mr. Thomas E. Smith, Jr.” Paul Hogan, Whitney’s loan officer, signed his acceptance to this letter on September 15. According to Smith, this documentation, together with his testimony, proves that the Whitney agreed to accept the pledged notes as collateral and to forbear charging interest or collecting the $318,000.00 as per his August 26, 1982 proposal to Hogan at Whitney.
Hogan, on the other hand, testified that he had orally agreed only to accept the pledged notes as collateral and had rejected Smith’s additional proposals in the August 26 letter. According to Hogan, his acceptance of Management Designs' letter merely constituted an acknowledgment of the delivery of the 18 promissory notes in pledge. He further testified that forbearance of interest for one year on the $318,-000.00 would have been a loss to the bank in excess of $40,000.00 and that holding Smith’s personal note on a 10% fixed rate of interest would have constituted a ⅛ re *793 duction in the interest rate then at 15%. He further testified that these concessions were totally unacceptable to the bank in exchange for collateral insufficient to retire either loan.
The testimony, exhibits, and evidence considered, we conclude, as did the trial judge, that the evidence is insufficient, as a matter of law, to prove Whitney’s consent to a forbearance agreement. Both of Smith’s notes to Whitney are unconditional in their terms. Although Smith’s testimony that Whitney accepted August 26 proposals to modify the terms of the note are in direct conflict with Hogan’s version of the events, the issue is not simply one of credibility but of contract interpretation of the letters involved.
Although a contract may be worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. LSA-C.C. Art. 2051. Applying this rule of construction, we do not interpret Hogan’s acceptance of the September 11 letter from Management Designs as a written acceptance of Smith’s August 26 proposal en to to. When read in a commonsense manner, the September 11 letter simply documents the delivery by Management Designs, a third party, of the eighteen promissory notes pledged as collateral to Whitney, and Hogan’s signature merely constitutes acceptance of that delivery. Significantly, the letter on Management Designs Corporation stationery indicates that Management Designs has “agreed” that Whitney will hold the notes as collateral for Smith’s obligations. We conclude the reference to the “terms of the letter addressed to you [Hogan] on August 26, 1982, by Mr. Thomas E. Smith, Jr.” concerns only the pledge of the notes and not Whitney’s assent to all of Smith’s proposals. The letter is not a contract between Whitney and Smith modifying the unconditional terms of the promissory notes sued on. Significantly, Whitney continued to bill Smith for interest as late as December, 1982, before demanding payment and ultimately filing the instant suit. Such conduct is inconsistent with forbearance.
The jury’s finding of an agreement to forbear was undoubtedly based on a misinterpretation of the Management Designs letter signed by Hogan. Under these circumstances, we conclude the trial judge correctly granted the judgment n.o.v. setting aside the jury’s verdict on this issue.
ADMISSIBILITY OF EXPERT TESTIMONY
Defendants further contend the trial judge erred in refusing to permit their expert, Dalton Nelson, to testify concerning the damages suffered by defendants through the loss of the value the franchising rights in the retail computer stores which Smith surrendered to raise collateral. The trial judge maintained Whitney’s objection to this testimony on the grounds of relevance.
In oral reasons for excluding Nelson’s testimony, the trial judge remarked that Smith had voluntarily given up his franchising opportunity in order to collateralize his loan in an attempt to obtain further financing from Whitney for his new venture, the small business investment corporation. The judge noted that Smith’s damages, if any, from Whitney’s breach of any agreement to forbear would be the loss of the profits of the small business investment corporation and not the franchise rights.
Relevancy of evidence is within the discretion of the trial judge, whose ruling will not be disturbed on appeal in the absence of a clear abuse of his discretion. Ketcher v. Illinois Central Gulf Railroad Co., 440 So.2d 805 (La.App. 1st Cir.1983), writ denied 444 So.2d 1220, 1222 (La.1984). The trial judge’s rationale for excluding Nelson’s testimony is sound. We find no abuse of the trial judge’s discretion in this case.
INTERROGATORIES
Finally in their reconventional demand, defendants asserted that Whitney had “fraudulently induced” them to make the $318,000.00 loan, provide guarantees, and *794 provide additional collateral by promising to lend additional money and to forbear collection of the existing notes. Defendants contend the trial court erred in refusing to submit jury interrogatories on the issue of fraud, although he orally instructed the jury concerning the burden of proving fraud.
Assuming, without concluding, that the trial judge erred in failing to submit specific interrogatories on fraud to the jury was erroneous, the error, if any, was harmless in this case. Any interrogatory concerning Whitney’s fraudulent inducement of defendants to sign the loans and guarantees presupposes that Whitney made promises to defendants in the first place. As previously indicated, the evidence in this case is insufficient to support conclusions that Whitney made promises to return the guarantees in connection with the debt of Key Travel Enterprises, Ltd., to loan Smith $800,000.00, or to extend or forbear collection of the two promissory notes. Under these circumstances, absent proof that any such promises were made a foundation is lacking for the jury to even reach the question of fraudulent inducement. Accordingly, the trial judge’s failure to submit interrogatories to the jury on the issue of fraud resulted in no prejudice to the defendants.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
SCHOTT, J., concurs.